715 F.2d 810
 UNITED STATES of America, Appellee,
v.
Kathleen NOVAK, Charles Kierecki, Richard Ware, Debra
McGuire, Joanne Kotomski, Patsy Arabia, Anthony
Emanuel, Karen Vansach.
Appeal of Patsy ARABIA in No. 82-5515.
Appeal of Richard M. WARE in No. 82-5516.
Appeal of Debra McGUIRE in No. 82-5526.
 Nos. 82-5515, 82-5516 and 82-5526.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1983.
Decided Aug. 25, 1983.
 
 Gerard J. Koechel (argued), Pittsburgh, Pa., for Patsy Arabia, appellant in No. 82-5515.
 Stanton D. Levenson (argued), Pittsburgh, Pa., for Richard M. Ware, appellant in No. 82-5516.
 George E. Schumacher, Federal Public Defender, W. Penn Hackney, Asst. Federal Public Defender, (argued), Pittsburgh, Pa., for Debra McGuire, Appellant in No. 82-5526.
 J. Alan Johnson, U.S. Atty., Constance M. Bowden, Asst. U.S. Atty. (argued), Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.
 Before SEITZ, Chief Judge, SLOVITER, Circuit Judge and POLLAK, District Judge*.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 I.
 
 1
 This is a drug conspiracy case presenting issues under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174 (1976 & Supp. III 1979). Appellants Arabia, McGuire, and Ware were among eight named defendants in an indictment charging a conspiracy to sell and distribute narcotics and various substantive offenses related to that conspiracy.
 
 
 2
 Appellants made various pretrial motions, including motions to suppress evidence and to dismiss the indictment under the Speedy Trial Act. The district court denied appellants' motions to suppress and to dismiss. Appellants then entered conditional pleas of guilty subject to their right to appeal the district court's denial of those pretrial motions. For the reasons set forth in the district court's memorandum order, we affirm the denial of the motions to suppress evidence. We address here only appellants' motions to dismiss under the Speedy Trial Act.[1]
 
 II.
 
 3
 The government filed an initial indictment against McGuire and Ware on October 8, 1981. It filed an initial indictment against Arabia on December 3, 1981. On January 28, 1982, Ware filed a motion to dismiss under the Speedy Trial Act; McGuire filed a similar motion the following day. The government filed a superseding indictment against Arabia, McGuire, and Ware, joining them with five other defendants on February 8, 1982. The initial indictments against appellants were dismissed on the government's motion on February 17, 1982. On February 25, 1982, the trial court granted McGuire's and Ware's motions to renew previously filed pretrial motions.
 
 
 4
 The charges against Arabia were severed from those against McGuire and Ware on May 24, 1982, when McGuire and Ware entered conditional pleas of guilty. No trial had begun on the charges against McGuire and Ware at the time they pled, 228 days after the original indictment was filed.[2] On June 8, 1982, Arabia filed a motion to dismiss under the Speedy Trial Act. Arabia was not brought to trial before July 20, 1982, when he pled, 229 days after the filing of the original indictment.
 
 
 5
 Under the Speedy Trial Act, criminal charges must be dismissed on defendant's motion, with or without prejudice, if various proceedings do not take place within a statutorily prescribed time. § 3162(a)(2). The defendant bears the burden of proof in support of his motion. Id. Section 3161(c) mandates dismissal if trial does not commence within 70 days of the later of the filing of the indictment or the defendant's first appearance before a judicial officer of the court in which such charges are pending, unless the excess days can be excluded under section 3161(h). The issue on this appeal is whether there was a violation of the Speedy Trial Act in this case.
 
 III.
 Arabia
 
 6
 Arabia was arrested on November 3, 1981 and appeared before the magistrate on November 4, 1981. On December 3, 1981, an indictment was filed,[3] charging Arabia and one other with conspiracy to possess with intent to distribute a quantity of the narcotic hydromorphone. The indictment also charged Arabia with the substantive offense of possession with intent to distribute a quantity of hydromorphone.
 
 
 7
 Arabia argues that the charges against him must be dismissed because no trial began within 70 non-excludable days of the filing of the original indictment. The government argues that the 70-day period to trial is calculated from the filing of the superseding indictment and thus that the period had not expired at the time Arabia pled. The government argues in the alternative that Arabia pled within the 70-day period even if the time for trial were calculated from the filing of the first indictment. We will assume without deciding that the time within which trial must commence is calculated here from the filing of the first indictment.[4]
 
 
 8
 The central dispute in this case concerns the number of days, if any, that are excludable due to pretrial motions. Section 3161(h)(1)(F) provides for the exclusion of "delay resulting from any pretrial motions." Applying subsection (F) to the facts of this case presents two issues. First, we must determine whether exclusion under subsection (F) requires a factual determination that the pretrial motions actually delayed the trial date. Second, if any excludable delay arises under subsection (F), we must determine the length of the permissible exclusion.
 
 
 9
 Arabia argues that no days are excludable under subsection (F) because the pretrial motions filed in this case caused no delay in the commencement of the trial. This causation argument has some appeal. If the pretrial motions did not actually delay the trial date, there seems to be little reason to exclude time from the 70-day period to trial. However, the legislative history of the Speedy Trial Act clearly indicates that Congress intended the exclusions under section 3161(h)(1)-(7) to operate without requiring a factual determination of causation.
 
 
 10
 In 1979, both the Department of Justice and the Judicial Conference submitted bills to amend the Speedy Trial Act. Both proposed amending section 3161(h)(1)-(7) to do away with the automatic exclusion and to substitute judicial discretion in its stead. S.Rep. No. 96-212, 96th Cong., 1st Sess. 33-34 (1979). Although Congress made significant amendments to the Act in 1979, it rejected that suggestion and left "intact ... the automatic application of exclusions as provided in existing law." Id. at 33. Thus, we hold that any period of time covered by section 3161(h)(1)(F) is excludable regardless of whether the pretrial motions actually delayed the trial date. See United States v. Stafford, 697 F.2d 1368, 1371 (11th Cir.1983) (rejecting causation approach); United States v. Cobb, 697 F.2d 38, 42 (2d Cir.1982) (same); United States v. Brim, 630 F.2d 1307, 1311-12 (8th Cir.1980) (same), cert. denied, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981); R. Misner, Speedy Trial Federal & State Practice 268 (1983).
 
 
 11
 We must now determine the scope of the exclusion that section 3161(h)(1)(F) provides. The current language of subsection (F) provides that the period of excludable delay resulting from the filing of pretrial motions runs "from the filing of the motion through the conclusion of the hearing on or other prompt disposition of such motion." § 3161(h)(1)(F). Applying subsection (F) to the facts of this case, we must determine how many days are permissibly excluded under that provision, and whether those exclusions, combined with others provided for in section 3161(h), stopped the Speedy Trial clock long enough to forestall a violation of that Act.
 
 
 12
 On December 31, 1981, when Arabia filed the first pretrial motion, 26 non-excludable days of the 70-day period to trial had run.[5] That motion was a request for an extension of time within which to file pretrial motions. The district court granted the motion on January 4, 1982, creating 5 excludable days under subsection (F) from filing to "prompt disposition."[6] In addition to the causation argument rejected above, Arabia contested the exclusion of this period because his motion pertained to the original indictment. The appellant cannot have it both ways: if the Speedy Trial clock starts to run with the filing of the original indictment, it must stop for excludable delays pertaining to that indictment.
 
 
 13
 On January 6, 1982, Arabia filed additional pretrial motions, stopping the Speedy Trial clock after 27 non-excludable days. While these motions were pending, and before the government filed its response, Arabia was arrested in New Jersey on unrelated charges on January 8, 1982. Arabia remained in custody in New Jersey until May 14, 1982. The two days between January 6 and January 8 are excludable under subsection (F). Arabia properly concedes that the 127 days between January 8 and May 14, during which he was being held in New Jersey, are excludable.[7] Thus, as of May 14, 1982, 27 non-excludable days of the 70-day period to trial had run.
 
 
 14
 As noted above, the government filed a superseding indictment on February 8, 1982, joining Arabia with seven other defendants in charges alleging an enlarged conspiracy and various related substantive offenses. The joinder of defendants on February 8 raises the possibility of another exclusion. Section 3161(h)(7) provides for the exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not yet run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). Several circuits have held that under this provision, and until severance is granted, "an exclusion applicable to one defendant applies to all codefendants." United States v. Edwards, 627 F.2d 460, 461 (D.C.Cir.1980), cert. denied, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). Accord United States v. Campbell, 706 F.2d 1138 (11th Cir.1983); United States v. Struyf, 701 F.2d 875, 878 (11th Cir.1983); United States v. Stafford, 697 F.2d 1368, 1372 (11th Cir.1983); United States v. Varella, 692 F.2d 1352, 1358 (11th Cir.1982); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983); R. Misner, supra, at 275. This interpretation makes large periods of time potentially excludable from the 70-day limit that Congress has set for the commencement of criminal trials. However, after reviewing the legislative history, we believe that Congress intended such exclusions, subject to a reasonableness limitation.
 
 
 15
 The legislative history of section 3161(h)(7) illustrates a strong congressional preference for joint trials and an intention that delays resulting from the joinder of codefendants be liberally excluded. The House bill did not manifest such a liberal attitude toward exclusion in multidefendant cases. It provided for the exclusion of a "reasonable period of delay" only where the government could show that "there is good cause for not granting a severance." In all other cases, the bill provided that "the defendant shall be granted a severance so that he may be tried within the time limits applicable to him." H.R. No. 7107, 92d Cong., 1st Sess. (1971). By putting the burden on the government to demonstrate that there was no need for severance, this bill ran contrary to the rules of severance contained in the Federal Rules of Criminal Procedure,[8] and tended to encourage separate trials.
 
 
 16
 The 1972 Senate subcommittee bill eliminated the preference for severance by conforming the present language of section 3161(h)(7) to the "traditional rules of severance." See S. 754, 93d Cong., 1st Sess. (1972) (§ 3161(h)(7)). The 1974 Senate Committee Report made the purpose of the joinder exclusion clear.
 
 
 17
 The purpose of the provision is to make sure that S. 754 does not alter the present rules of severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under section 3162.
 
 
 18
 S.Rep. No. 93-1021, 93d Cong., 1st Sess. 38 (1974).
 
 
 19
 Section 3161(h)(7) was not amended in 1979, but in encouraging more liberal interpretations of the exclusions provided in section 3161(h), Congress reaffirmed its intent that the joinder exclusion be expansively construed.Defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save the time, expense and inconvenience of separate prosecutions. It has been reported that some trial judges have granted severances unnecessarily in multidefendant cases 'so that a defendant whose case is moving too slowly does not hold up the trial of his codefendants.' ... If the Act has been interpreted to require such a result, the Committee calls to the Senate's attention § 3161(h)(7), which provides specifically for exclusion of 'a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom trial has not yet run.'
 
 
 20
 S.Rep. No. 96-212, 96th Cong., 1st Sess. 24-25 (1979).
 
 
 21
 We believe that section 3161(h)(7) represents a congressional effort to build into the Speedy Trial Act sufficient flexibility to allow the government to stop criminal activity by arresting the suspected perpetrators as soon as it has probable cause, without precluding a joint trial with compatriots who may be apprehended at a later date. We believe that it is consistent with this congressional intent to apply section 3161(h)(7) so that, after defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants," Edwards, supra, 627 F.2d at 461, subject to the reasonableness constraint. We do not believe that this interpretation is necessarily inconsistent with the application of section 3161(h)(7) suggested in the Federal Guidelines. Under the Guidelines approach, the starting date of the exclusion is "the day following the day that would otherwise have been the last day for the commencement of trial for the particular defendant." Id. at 53. The ending date of the exclusion is, subject to the reasonableness limitation, either the latest permissible trial date of any codefendant, or severance, whichever is earlier. Id. It may be appropriate to use this method of calculating excludable time under subsection (h)(7) when, after having taken account of all the excludable time as to all defendants, the time for trial has run as to one defendant but not as to his codefendants and exclusion is necessary to permit a joint trial. However, we believe that Congress also intended subsection (h)(7) to be used in conjunction with other exclusions, so that, for example, an exclusion under subsection (F) applicable to one defendant would, by virtue of subsection (h)(7), be applicable to all his codefendants.
 
 
 22
 Applying section 3161(h)(7) to the facts of this case, we exclude from the 70-day period within which Arabia should have been brought to trial all of the exclusions applicable to Arabia's codefendants before the date of severance. On May 14, one of Arabia's codefendants filed a pretrial motion which was denied on May 24, the date of severance. The 11 days from May 14 to May 24 would be excludable from the codefendant's trial clock under section 3161(h)(1)(F), and we hold that under subsection (h)(7), the 11 days from May 14 to May 24 are excluded from the 70-day period to trial applicable to the charges against Arabia. Thus, as of May 24, 1982, only 27 non-excludable days had run, leaving 43 non-excludable days within which trial should have begun.
 
 
 23
 On June 1, 1982, Arabia filed a motion requesting an extension of time within which to file pretrial motions. This was granted on June 2, and on June 8, Arabia filed his pretrial motions, including a motion to dismiss under the Speedy Trial Act. The government filed its response to all motions on June 21. These motions were decided at a hearing on July 20, and Arabia pled that same day. The government argues that the 2 days from June 1 to June 2 and the 43 days from June 8 to July 20 are all excludable under subsection (F). We turn to that issue.
 
 
 24
 Counseling against potential abuse under the liberal exclusion provided by subsection (F), Congress urged that any exclusions allowed under that provision be guided by local court rules governing motions practice. S.Rep. No. 96-212, 96th Cong., 1st Sess. 33-34 (1979). Congress recognized that, without the limiting standards that such rules might provide, exclusions under subsection (F) could expand so as to undermine the whole Act. Id.
 
 
 25
 The local rules of the Western District of Pennsylvania provide that, absent an extension, criminal defendants must file pretrial motions within 10 days of arraignment. Similarly, the government must respond within 10 days, absent an extension. Local Rule 24(2)(a) & (b). Under these rules and section 3161(h)(1)(F), we hold that the following days are excludable: the 2 days from June 1 to June 2 and the 14 days from June 8 to June 21 that the government took to respond.[9] As an alternative to the causation argument, appellant contends that 30 days is the maximum excludable time with respect to the pretrial motions. Because we exclude less than 30 days, we need not address appellant's argument at this juncture.
 
 
 26
 Taking account of these exclusions, only 39 non-excludable days had run as of June 21, leaving 31 non-excludable days within which trial should have begun. Arabia pled on July 20, 1982, within 29 days. Thus, we hold that the 70-day period had not yet expired when Arabia pled, and of course, it had not expired the preceding month, when Arabia filed his motion to dismiss under the Speedy Trial Act. We need not decide whether any or all of the 29-day delay in scheduling a pretrial hearing is excludable under section 3161(h)(1)(F). Furthermore, we have held that Arabia pled within 70 non-excludable days of the original indictment. Thus, we need not determine whether, as to Arabia, the superseding indictment started the Speedy Trial clock anew.
 
 
 27
 For the above reasons, we uphold the district court's denial of Arabia's motion to dismiss under the Speedy Trial Act, and we will affirm Arabia's sentences on all counts.
 
 McGuire and Ware
 
 28
 McGuire and Ware were arrested on September 9, 1981 and appeared before the magistrate on September 17, 1981. On October 8, 1981, an indictment was filed charging McGuire, Ware, and two others with conspiracy to possess with intent to distribute a quantity of the narcotic hydromorphone. The indictment also charged the named defendants with substantive offenses related to that conspiracy. Ware filed a motion to dismiss under the Speedy Trial Act on January 28, 1982, and McGuire filed a similar motion the following day.
 
 
 29
 On February 8, 1982, the government filed a superseding indictment against McGuire and Ware, joining them with six other defendants. This indictment charged an enlarged conspiracy and various related substantive offenses. The first indictment was dismissed on the government's motion on February 17, 1982. On February 25, 1982, McGuire and Ware each filed a motion to renew previously filed motions. The motions to renew were granted the same day. Ware's motion to renew specifically mentioned his previous motion to dismiss under the Speedy Trial Act. McGuire was less specific, but he also requested to join in the pretrial motions of his codefendants, and this request was granted.
 
 
 30
 McGuire and Ware argue that the filing of the superseding indictment created no excludable delay under the Speedy Trial Act and that because no trial began within 70 non-excludable days of the filing of the original indictment, the charges against them should have been dismissed. The government argues that the district court properly calculated the 70-day period to trial from the filing of the superseding indictment. We turn to that issue.
 
 
 31
 Section 3161(h)(6) provides for excludable delay whenever an indictment is dismissed on the government's motion and a superseding indictment is later filed charging "the same offense, or any offense required to be joined with that offense." Legislative history makes it clear that "[u]nder this provision only the period of time during which the prosecution has actually been halted is excluded." S.Rep. No. 93-1021, 93d Cong., 1st Sess. 38 (1974). In this case, the superseding indictment was filed on February 8, and McGuire and Ware were arraigned on February 16. Because both of these events occurred before the original indictment was dismissed on February 17, there was no time during which the prosecution against McGuire and Ware was halted. Thus, if the charges in the superseding indictment were the same as, or required to be joined with, those contained in the original indictment, the filing of the superseding indictment created no excludable delay under section 3161(h)(6).[10]
 
 
 32
 Although the Speedy Trial Act does not define the term "required to be joined," legislative history makes it clear that this language means joinder required by the Double Jeopardy Clause of the Constitution. See S.Rep. No. 96-212, 96th Cong., 1st Sess. 10 (1979). Thus, we must determine whether, within the meaning of the Double Jeopardy Clause, the charges contained in the superseding indictment are the same as, or required to be joined with, charges contained in the original indictment.
 
 
 33
 The Double Jeopardy Clause prohibits the government from trying a defendant for the same offense in separate proceedings. Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In the context of multiple charges of conspiracy under the same statute, the United States Supreme Court has held that "a single agreement to commit an offense does not become several conspiracies because it continues over a period of time." Braverman v. United States, 317 U.S. 49, 52, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). The Court made it clear in that case that when multiple conspiracies are charged under the same statute, the government must prove separate agreements. If the evidence shows that there was but a single agreement in violation of a single statute, the defendant can be found guilty of only one offense under the statute.
 
 
 34
 [W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.
 
 
 35
 ....
 
 
 36
 Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes.... The single agreement is the prohibited conspiracy, and ... it violates but a single statute....
 
 
 37
 Id. at 53-54, 63 S.Ct. at 101-102 (emphasis added).
 
 
 38
 Both conspiracy counts in the two indictments in this case allege a drug conspiracy involving the sale and distribution of the narcotic hydromorphone in violation of 21 U.S.C. § 841(a)(1), and appellants argue that the two conspiracy counts charge the same offense.
 
 
 39
 In the context of disputes under the Speedy Trial Act, courts generally will be limited to the face of the indictment in determining whether the superseding indictment charges the same offense, within the meaning of subsection (h)(6) and the Double Jeopardy Clause, as the original indictment. This is so because the first indictment will have been dismissed on the government's motion before trial, and under section 3162(a)(2), the defendant must challenge the timeliness of the charges in the second indictment before trial. On their face, the similarities between the two conspiracy counts in this case are striking.[11] The duration of the conspiracy charged in the superseding indictment encompasses the duration of the conspiracy charged in the original indictment. The conspiracy count in the superseding indictment charges all of the defendants charged in the conspiracy count of the original indictment, and the two conspiracy counts allege the same locus and are supported by some of the same overt acts. These similarities create a strong presumption that the two counts charge the same offense. See United States v. Mallah, 503 F.2d 971, 985-87 (2d Cir.1974), cert. denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). The government's description of the relationship between the conspiracy charges in the two indictments only reinforces this presumption.
 
 
 40
 In its brief to this court, the government explained that the second conspiracy charged a "classic chain conspiracy consisting of three links; the responsibility of the members of each link for the overall agreement being based upon the fact that they knew and depended upon the participation of the others.... The first indictment, on the other hand charged only the agreement among the members of link three." The government's description makes it clear that the agreement with which McGuire and Ware were charged in the first indictment was the same agreement with which they were charged in the second indictment. The second indictment merely expanded the scope of that agreement and the number of participants involved, and charged that McGuire and Ware were conscious of and depended on that larger agreement and those additional participants.
 
 
 41
 Comparing the two conspiracy charges as they appear on the faces of the two indictments, we conclude that as to McGuire and Ware, the time to trial applicable to the conspiracy charged in the superseding indictment must be calculated from the filing of the original indictment.[12] The government has argued on appeal that it "was not aware of or at least could not prove the overall agreement at the time the original indictment was returned." Thus, the government argues that the filing of the superseding indictment should start the Speedy Trial clock anew even if the two conspiracy counts charge the same offense within the meaning of subsection (h)(6) and the Double Jeopardy Clause. The government relies on a suggestion by the Supreme Court that there may be an exception to the prohibition under the Double Jeopardy Clause of successive prosecutions for greater and lesser included offenses "when the [government] is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge ... have not been discovered despite the exercise of due diligence." Brown, supra, 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7. Accord Illinois v. Vitale, 447 U.S. 410, 420 n. 8, 100 S.Ct. 2260, 2267 n. 8, 65 L.Ed.2d 228 (1980) (Stevens, J., dissenting); Jeffers v. United States, 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977) (opinion of Blackmun, J.); Ashe v. Swenson, 397 U.S. 436, 453 n. 7, 90 S.Ct. 1189, 1199 n. 7, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).
 
 
 42
 We decline to incorporate into subsection (h)(6) of the Speedy Trial Act an exception to the Double Jeopardy Clause that has not yet been accepted by the Supreme Court. We believe that whenever the court determines from the face of the indictment that a superseding indictment charges an offense that is the same as, or required to be joined with, an offense charged in the original indictment within the meaning of subsection (h)(6) and the Double Jeopardy Clause, trial on that offense must commence within the time limitation for trial applicable to the original indictment. If additional time is needed to try the offense included in the superseding indictment because the government, despite the exercise of due diligence, was not aware of that offense at the filing of the original indictment, an application for a continuance under subsection (h)(8) might be appropriate. No such application was made here.
 
 
 43
 The government properly concedes that counts 18 and 19 of the superseding indictment charge the same offenses as counts 2 and 3, respectively, of the original indictment. Thus, the time to trial applicable to counts 18 and 19 must also be calculated from the filing of the original indictment.
 
 
 44
 On October 26, 1981, when McGuire, Ware, and their codefendants filed their first pretrial motions, 16 non-excludable days of the 70-day period to trial had run.[13] On October 26-28, McGuire and Ware filed numerous pretrial motions, including motions relating to discovery and the suppression of evidence. The government filed its responses to all motions on November 12, 1981.[14] Neither the court nor the parties took any further action until January 28-29, 1982, when McGuire and Ware each filed motions to dismiss under the Speedy Trial Act. At that time, 76 days had elapsed since the government filed its responses, and 110 days had elapsed since the indictment. Unless 40 or more of these 110 days were excludable from the Speedy Trial clock, there was a violation of the Act by the time appellants filed their motions to dismiss.
 
 
 45
 We have held above that exclusion under section 3161(h)(1)(F) does not require a factual determination whether the motions actually delayed the trial. However, we do not believe that Congress intended the length of permissible exclusions under this section to be bounded only by the filing date and the hearing date, without any regard to reasonableness.
 
 
 46
 Congress recognized that "without basic standards for prompt consideration of pretrial motions," the liberalized exclusion under the 1979 amendments to subsection (F) "could become a loophole which could undermine the whole act." S.Rep. No. 96-212, 96th Cong., 1st Sess. 33-34 (1979). Instead of imposing rules on the courts to limit such abuse, Congress encouraged the courts to use their local rules "to set uniform standards for motion practice." Id. However, Congress did not leave the courts unaware of the specific abuse about which it was concerned. The Senate Committee reported that local court rules should guide the courts in fixing both a starting date and an ending date for the period of exclusion. The Committee specifically noted that it did not "intend that additional time be made eligible for exclusion by postponing the hearing date ... of the motions beyond what is reasonably necessary." Id. (emphasis added).[15]
 
 
 47
 Thus, we hold that under section 3161(h)(1)(F) of the Act permissible exclusions applicable to pretrial motions begin with the filing of a motion and run only "for a period of time that is 'reasonably necessary' to conclude a hearing [on the motion] or to complete the submission of the matter to the court for decision." United States v. Cobb, supra, 697 F.2d at 44. But see United States v. Stafford, 697 F.2d 1368, 1373 & n. 4 (11th Cir.1983) (holding that period from filing to conclusion of hearing is automatically excluded "without qualification"). All of the time involved in long postponements of hearing dates and long extensions of time for filing responses will not qualify for exclusion under subsection (F), unless the district court determines that such delays are reasonably necessary to ready the motion for judicial consideration.
 
 
 48
 Furthermore, to protect the integrity of the reasonableness requirement for exclusions under section 3161(h)(1)(F), we invoke our supervisory power to require district courts in the future to make specific and approximately contemporaneous findings as to the reasonableness of any extended exclusions for pretrial motions under subsection (F).[16] This requirement will be in effect until such time as the district courts amend their Plans to implement the reasonableness constraint.
 
 
 49
 In this regard, we do not believe a fixed time limit such as provided in subsection (h)(1)(J)[17] should be adopted under subsection (h)(1)(F) for the following reasons:
 
 
 50
 First, the 1979 Senate Report concerning the Speedy Trial Act indicates that Congress was aware of the 30-day limit under subsection (h)(1)(J) at the time that it considered subsection (F). See United States v. Cobb, supra, 697 F.2d at 43-44 (quoting relevant language from Senate Report). This awareness, combined with Congress' failure to fix a similar time limit under subsection (F), leads us to believe that Congress did not intend to fix a precise limit on the time excludable under subsection (F) other than the "reasonably necessary" requirement.
 
 
 51
 Second, more flexibility is necessary with regard to time excludable under subsection (h)(1)(F) because the realm of contingencies that might give rise to periods of excludable delay under subsection (F) is greater than under subsection (h)(1)(J). See United States v. Bufalino, 683 F.2d 639, 646 (2d Cir.1982) (counsel's unexpected tardiness in responding to motion). The "reasonably necessary" limit we have adopted with regard to excludable time under subsection (F) is well adapted to providing the flexibility necessary under subsection (F).
 
 
 52
 The district court in this case did not apply the reasonableness criterion to delays under subsection (F).[18] However, the pretrial motions that appellants filed on October 26-28, 1981 were sufficiently numerous and complex to have warranted a finding that it was reasonably necessary to exclude the 18 days from the filing of the motions to the government's response on November 12, 1981.[19] Similarly, the number and complexity of appellants' pretrial motions would have justified a finding by the district court that at least 30 days were reasonably necessary to prepare for a hearing on these motions. We therefore hold to be excludable under subsection (F) more than 40 days within the 110-day period from the filing of the indictment on October 8, 1981 to the filing of appellants' motions to dismiss on January 28-29, 1982. There was therefore no violation of the Act when appellants filed their motions to dismiss.
 
 
 53
 When reviewing the denial of a motion to dismiss, we ordinarily examine the motion's merits as of the day on which the motion was filed. In this case, however, appellants made motions to renew their previously filed motions on February 25, 1982, after the superseding indictment. The grant of these motions to renew previously filed motions, including appellants' motions to dismiss under the Speedy Trial Act, was effective to allege a violation of the Act as of February 25. Given this later allegation, the motions to dismiss that were filed on January 28-29, 1982 are themselves "pretrial motions" which trigger an exclusion under section 3161(h)(1)(F).[20] Under subsection (F), the district court would have been warranted in finding that the days between the filing of the motions to dismiss on January 28-29 and the filing of the superseding indictment on February 8 were reasonably excludable.
 
 
 54
 Once the superseding indictment was filed, appellants McGuire and Ware were joined with new codefendants (including appellant Arabia). This triggered section 3161(h)(7), which permits an exclusion based on joinder with codefendants as to whom the Speedy Trial clock has not run. We have held above that under subsection (h)(7), an exclusion that applies to one defendant applies to all his codefendants, subject to an explicit reasonableness constraint. We have also held that because Arabia was in custody in New Jersey from early January, 1982 until mid-May, 1982, all of that time was excludable from Arabia's Speedy Trial clock. Under subsection (h)(7), a reasonable amount of that time was also excludable from the trial clocks of Arabia's codefendants McGuire and Ware. In this case, the district court could easily have found it reasonable to exclude at least two and a half weeks following the joinder of McGuire and Ware to Arabia. Therefore, we hold that no time on the Speedy Trial clock elapsed between February 8, 1982, when the superseding indictment was filed, and February 25, 1982, when the district court granted appellants' motions to renew previously filed motions (including their motions to dismiss under the Speedy Trial Act).
 
 
 55
 We have held that there was no violation of the Speedy Trial Act as of January 28-29, 1982. As a result of the above exclusions, no further time elapsed between January 28-29 and February 25. Therefore, there was no violation of the Act as of February 25, 1982, and, with respect to the conspiracy count and counts 18 and 19 of the superseding indictment, the district court properly denied appellants' motions to dismiss. We must affirm the sentences of McGuire and Ware on these counts.
 
 
 56
 The government argues that counts 16 and 17 of the superseding indictment do not charge either McGuire or Ware with an offense that is the same as, or required to be joined with, any of the offenses alleged against either McGuire or Ware in the original indictment.[21] If the government were correct, the 70-day period to trial on these counts would be calculated from February 16, 1982, the day on which McGuire and Ware were arraigned under the superseding indictment.[22] Under this assumption, the Speedy Trial clock clearly would not have run on counts 16 and 17 as of February 25, 1982, when the district court granted appellants' motions to renew previously filed motions. If the government's argument is incorrect, the period to trial on counts 16 and 17 would run from the filing of the original indictment, and we have held above that 70 non-excludable days did not elapse between the filing of the original indictment and the grant of appellants' motions to renew.
 
 
 57
 Therefore, with respect to counts 16 and 17, the district court properly denied appellants' motions to dismiss under the Speedy Trial Act, and we must affirm appellants' respective sentences on these counts.
 
 IV.
 
 58
 We will affirm the sentences of Arabia, McGuire, and Ware on all counts.
 
 
 
 *
 Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Arabia argues that the district court abused its discretion in sentencing him to a longer term of imprisonment than his codefendants. We hold that the sentence imposed on Arabia was within the discretion of the district court
 
 
 [2]
 The 228 days are calculated pursuant to F.R.Crim.P. 45(a), which provides:
 In computing any period of time the day of the ... event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days.
 
 
 [3]
 Arabia argues that the indictment must be dismissed because it was not filed within 30 days of his arrest as mandated by section 3161(b). However, Arabia expressly abandoned that argument at the July 20, 1982 hearing before the district court, and he may not raise it now
 
 
 [4]
 Under section 3161(c), the 70-day countdown to trial begins with the filing of the indictment or the defendant's first appearance before a judicial officer of the court in which charges are pending, whichever occurs later. Because Arabia made his first judicial appearance on November 4, 1981, the December 3, 1981 filing date begins the 70-day period. United States v. Carrasquillo, 667 F.2d 382, 384 (3d Cir.1981)
 
 
 [5]
 In counting 26 days, we exclude December 11, 1981, the day that Arabia was arraigned. See § 3161(h)(1) (excluding "delay resulting from other proceedings concerning the defendant"); United States v. Campbell, 706 F.2d 1138, 1139 n. 1 (11th Cir.1983); United States v. Mers, 701 F.2d 1321, 1332 n. 6 (11th Cir.1983)
 
 
 [6]
 Under the amended Guidelines to the Administration of the Speedy Trial Act of 1974 [Federal Guidelines ] (Dec. 1979), "computation of periods of exclusion should ... include both the day of commencement and the day of termination of the events ... giving rise to the exclusion." Id. at 22
 
 
 [7]
 The 127 days are excludable under the following provisions: § 3161(h)(1)(D) excludes January 8, 1982 to April 28, 1982 as days during which Arabia was in custody awaiting trial in New Jersey; § 3161(h)(3) excludes April 28, 1982 to May 14, 1982 as days during which Arabia was unavailable
 
 
 [8]
 Under F.R.Crim.P. 14, the court will not grant a severance absent a showing of prejudice by the defendant
 
 
 [9]
 Time excluded under the Speedy Trial Act includes both the day of the event giving rise to the exclusion and the last day of the exclusion. See note 6 supra. However, the 10 days within the government must file a response to pretrial motions under Local Rule 24 is calculated according to F.R.Crim.P. 45(a). See note 2 supra. The government's response was one day late under that rule. It is not clear from the docket sheet whether an extension was granted. However, because the defendant never objected that the response was untimely, and because a one day extension would be reasonable here, we believe that the response was timely under Local Rule 24
 
 
 [10]
 As required by 18 U.S.C. § 3165, the Western District of Pennsylvania prepared a plan for the disposition of criminal cases in accordance with the Speedy Trial Act. Final Plan Pursuant to the Speedy Trial Act of 1974 [Plan] (W.D.Pa.1980). Paragraph 4(f)(5) of the Plan provides that where a superseding indictment is filed while an original indictment is pending "the trial on the new charge shall commence within the time limit for commencement of trial on the original indictment."
 
 
 [11]
 The conspiracy count in the original indictment charged:
 From on or about September 3, 1981 through on or about September 9, 1981, in the Western District of Pennsylvania, the defendants, RICHARD M. WARE, KATHLEEN NOVAK, DEBRA MCGUIRE, and JOANNE KOTOMASKI, and others to the grand jury known and unknown, did knowingly, wilfully and unlawfully conspire together ... to distribute and possess with the intent to distribute hydromorphone ... in violation of Title 21, United States Code, Section 841(a)(1).
 The conspiracy count in the superseding indictment charged:
 From on or about September 29, 1978 to on or about February 8, 1982 in the Western District of Pennsylvania the defendants KATHLEEN NOVAK, CHARLES KIERECKI, RICHARD WARE, DEBRA MCGUIRE, JOANNE KOTOMASKI, PATSY ARABIA, ANTHONY EMANUEL, and KAREN VANSACH did wilfully, knowingly and unlawfully conspire together ... to possess with the intent to distribute, and to distribute, hydromorphone ... in violation of Title 21. United States Code, Section 841(a)(1).
 
 
 [12]
 Because McGuire and Ware made a pre-indictment appearance on September 17, 1981, the filing of the original indictment begins the 70-day period to trial. Carrasquillo, supra, 667 F.2d at 384
 
 
 [13]
 In counting 16 days, we exclude October 15, 1981, the day on which McGuire, Ware, and their codefendants were arraigned. See note 5 supra
 
 
 [14]
 If all of the pretrial motions had been filed on October 29, the government's response would have been due on November 9 under Local Rule 24. However, the docket sheet indicates that the district court entered an order extending McGuire's time for filing a motion to suppress to November 6. Thus, we assume that the government's November 12 response was timely under Local Rule 24
 
 
 [15]
 Consistent with this approach, the Western District of Pennsylvania, as required by section 3165 of the Speedy Trial Act, prepared a plan for the disposition of criminal cases in accordance with the Speedy Trial Act. Final Plan Pursuant to Speedy Trial Act of 1974 [Plan], (W.D.Pa.1980). In response to congressional prodding to provide for the prompt disposition of pretrial motions. p 4(f)(7) of the Plan provides that "[a]ll pre-trial hearings shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket."
 
 
 [16]
 A reasonableness determination for relatively brief delays is not necessary under subsection (F). See United States v. Cobb, supra, 697 F.2d at 46 n. 8
 
 
 [17]
 Section 3161(h)(1)(J) provides an exclusion for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."
 
 
 [18]
 Appellants bear the burden of proof on this issue under section 3162(a)(2). Thus, we could reject this appeal on the grounds that appellants did not demonstrate that the delay was unreasonable. We decline to do so because this is the first time that we have articulated the reasonableness requirement under subsection (F)
 
 
 [19]
 McGuire and Ware made fifteen pretrial motions on October 26-28, 1981. Various codefendants made several additional motions during this period and on the following day
 McGuire's motions included the following: motion to sever count 3 of the original indictment; motion to sever defendant McGuire; motion for production of grand jury testimony and memorandum; extensive discovery motion to compel disclosure.
 Ware's motions included the following: motion for detailed Bill of Particulars; motion to compel government to state evidence of uncharged misconduct; discovery motion to compel production of numerous documents; motion to sever defendant Ware; motion to compel disclosure of plea bargains, preferential treatment, and promises made to government witnesses; motion for ordering of government's proof or for a separate hearing to determine existence of conspiracy; motion to suppress evidence, based on numerous alleged constitutional violations.
 
 
 [20]
 We noted in Carrasquillo that "[t]he period from filing of the motion to dismiss to its disposition was excludable under subsection (h)(1)(F)." 667 F.2d at 385 n. 1. This comment, unnecessary to the decision in Carrasquillo, did not set forth a per se rule with respect to exclusions based on a motion to dismiss
 
 
 [21]
 Count 16 of the superseding indictment charged Ware with the substantive offense of unlawfully distributing hydromorphone on September 4, 1981, an offense not charged in the original indictment. Similarly, count 17 of the superseding indictment charged McGuire with the substantive offense of unlawfully distributing hydromorphone on September 8, 1981, an offense not charged in the original indictment
 
 
 [22]
 The superseding indictment was filed on February 8, 1982. McGuire made an initial appearance under this indictment on February 9, 1982, and Ware made an initial appearance the following day