**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2946
_____

UNITED STATES OF AMERICA

v.

PHILIP ERBY,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 3-07-cr-00372-002)
District Judge:  Thomas I. Vanaskie

Submitted March 17, 2011

Before:  BARRY, CHAGARES, and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed: March 22, 2011)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Defendant Philip Erby appeals his convictions for conspiracy to distribute in

excess of fifty grams of cocaine base and possession with intent to distribute in excess of

fifty grams of cocaine base.  For the reasons set forth below, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the essential facts. In July 2007, agents from the Drug Enforcement Administration ("DEA"), Pennsylvania State Police, and Wilkes-Barre Police began investigating certain drug trafficking activities originating in New York State. As part of this investigation, a confidential informant ("CI") provided information about two drug traffickers from upstate New York, Linda Bonnano and Anthony Davis.

The CI arranged a sample purchase of crack cocaine between Bonnano and an undercover agent posing as a Wilkes-Barre drug dealer, which occurred on July 24, 2007. On that day, Bonnano arrived at a prearranged location in Wilkes-Barre and sold a small amount of crack cocaine to the undercover agent. The agent proceeded to discuss the growing market for crack cocaine in Wilkes-Barre with Bonnano, in an attempt to get Bonnano to lead the police to her drug suppliers. The agent asked Bonnano if she would be able to get 100 grams of crack for him in the future. She said she could.

At the DEA's direction, the CI later reached out to Bonnano to place an order for 100 grams of crack, suspecting that Bonnano would in turn reach out to Davis to obtain such a large quantity of drugs. Davis told Bonnano that Erby could supply that much crack cocaine for distribution in Wilkes-Barre. Pursuant to Bonnano's request, Davis contacted Erby and arranged to meet him in Poughkeepsie, New York, to conduct the transaction. Davis, Bonnano, and Erby met in Poughkeepsie shortly thereafter, but Erby would not go through with the transaction because Davis and Bonnano did not then have the money required to pay for the drugs.

2

In September 2007, the DEA instructed the CI to make a second attempt at arranging a large quantity buy from Bonnano and Davis. The CI contacted Bonnano, who asked Davis to arrange the transaction. Davis again contacted his supplier, Erby. Erby agreed to provide 250 grams of crack to Davis for distribution in Wilkes-Barre. Davis and Erby met in Bronx, New York, and travelled to Wilkes-Barre together to deliver the crack to the CI at a specified meeting place. The CI, who was travelling to Pennsylvania ahead of Davis and Erby, received instructions from the DEA to arrive prior to the scheduled transaction time in order to meet with agents. At the DEA's direction, the CI made consensually-recorded phone calls to Bonnano and Davis. In the first conversation, Bonnano said that she would call Davis and ask him to call the CI. In the second conversation, the CI gave Davis directions to the specified meeting place at which they would conduct the drug transaction.

Thereafter, agents observed Davis and Erby arrive at the meeting place and the CI, at the direction of the agents, walked over to Erby's vehicle. Erby told the CI where the drugs were located in the car and the CI took them into his possession. The CI immediately turned the drugs over to the DEA agents and Erby and Davis were arrested.

On September 18, 2007, Erby, Davis, and Bonnano were indicted jointly by a federal grand jury on both substantive drug charges and a conspiracy charge. The three were arraigned on October 4, 2007, at which time they were provided with a deadline of October 30, 2007, for filing pretrial motions. Trial was originally scheduled for December 11, 2007. On October 30, 2007, Davis filed his first of nine consecutive unopposed motions for an extension of time to file pretrial motions, the last of which

3

resulted in a reset trial date of September 23, 2008. The trial was again postponed, however, by Erby's September 18, 2008, motion for a continuance. Davis never went to trial, instead pleading guilty on September 30, 2008.[1]

Erby filed several more motions to continue his trial, which finally commenced in the spring of 2010. The jury convicted Erby of conspiracy to distribute in excess of fifty grams of cocaine base and possession with intent to distribute in excess of fifty grams of cocaine base and the District Court sentenced him accordingly on June 25, 2010. This appeal of the convictions timely followed.

II.

The District Court properly exercised jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the District Court's final judgment of conviction pursuant to 28 U.S.C. § 1291.

Erby asserts two claims on appeal. First, he contends that the District Court erred in denying his motion to dismiss the indictment based on a violation of his rights under the Speedy Trial Act. Second, he asserts that the District Court improperly permitted the Government to introduce evidence of the July 24, 2007, drug transaction between Bonnano and the undercover agent at trial. We consider each claim in turn.

III.

A.

---

[1] Davis began to discuss the possibility of a plea agreement during a proffer session with the Government on May 6, 2008.

Erby initially claims that the District Court erred in refusing to dismiss the indictment against him pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq. Specifically, he contends that the District Court improperly excluded delays caused by his co-defendant between September 18, 2007, and September 18, 2008, from his speedy trial clock calculation. "We exercise plenary review over the district court's application of the Speedy Trial Act." United States v. Willaman, 437 F.3d 354, 357 (3d Cir. 2006).

The Speedy Trial Act (the "Act") provides that "if a plea of not guilty is entered, the trial of a defendant charged in an information or indictment 'shall commence within seventy days from the filing date (and making public) of the information or indictment or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs.'" Id. (quoting 18 U.S.C. § 3161(c)(1)). Despite the strict time limits that the Act places on commencing trial, however, it also recognizes that criminal cases vary and that there are many valid reasons for delay. Consequently, "the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." Zedner v. United States, 547 U.S. 489, 497 (2006). For instance,

> Delay resulting from any pretrial motion, from the date of the filing of the motion through the date of the prompt disposition of the motion, is excluded from the computation of Speedy Trial Act time. See 18 U.S.C. § 3161(h)(1)[(D)]. Any pretrial motion, including a motion for extension of time, is a pretrial motion within the meaning of Section 3161(h)(1)[(D)].

United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993). Moreover, "the amount of time set aside by a district court for the preparation and submission of pretrial motions is excludable 'delay resulting from other proceedings' under 18 U.S.C. § 3161(h)(1),

5

regardless of whether the time is granted <u>sua sponte</u> or pursuant to the defendant's request." <u>United States v. Barnes</u>, 909 F.2d 1059, 1064 (7th Cir. 1990). Indeed, broadly speaking, the Act excludes "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel" if the judge determines that "the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Importantly for present purposes, pursuant to § 3161(h)(6), "after defendants are joined for trial, 'an exclusion applicable to one defendant applies to all codefendants.'" <u>See</u> <u>United States v. Novak</u>, 715 F.2d 810, 815 (3d Cir. 1983) (quoting <u>United States v. Edwards</u>, 627 F.2d 460, 461 (D.C. Cir. 1980)), <u>abrogated on other grounds by</u> <u>United States v. Felton</u>, 811 F.2d 190 (3d Cir. 1987) (en banc); <u>see also</u> <u>Arbelaez</u>, 7 F.3d at 347 (quoting <u>Novak</u>, 715 F.2d at 815). Against this statutory backdrop, we turn to the relevant speedy trial clock calculation.

Erby was indicted on September 18, 2007. The parties agree that this is the date on which the speedy trial clock began to run. <u>See</u> <u>Arbelaez</u>, 7 F.3d at 346. Erby was arraigned along with his co-defendants on October 4, 2007, at which time they were provided with a filing deadline for pretrial motions of October 30, 2007. This period of time, which was set aside for the preparation of pretrial motions, is excludable from the speedy trial clock. <u>See</u> <u>Barnes</u>, 909 F.2d at 1064.

On October 30, 2007, co-defendant Davis filed the first of nine unopposed motions for extension of time to prepare pretrial motions. The District Court granted this motion, finding such an extension of time to be in the interests of justice. The District

6

Court thus extended the filing deadline for pretrial motions to November 30, 2007, and rescheduled the trial for January 28, 2008.

Co-defendant Davis subsequently filed eight other similar motions for extension of time. Each was submitted before the previous deadline to file pretrial motions expired; each was granted by the District Court in the interests of justice; and each resulted in a delay which is excludable under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D); Barnes, 909 F.2d at 1064. Accordingly, Davis' speedy trial clock was tolled continuously from October 4, 2007, the date on which the court set the initial deadline for pretrial motions, to September 23, 2008, the date on which trial was scheduled to begin after the last of Davis' motions. See United States v. Jenkins-Watts, 574 F.3d 950, 966 (8th Cir. 2009) ("[T]he time from the first motion for a continuance to the trial is excluded from the speedy trial calculation."). And because "an exclusion applicable to one defendant applies to all codefendants," Arbelaez, 7 F.3d at 347, Erby's speedy trial clock was similarly tolled during this time. As such, the only non-excludable time that elapsed during the period from September 18, 2007 to September 18, 2008 is the fifteen days between the indictment and the arraignment — well within the seventy days allotted by the Speedy Trial Act.[2]

Notwithstanding the mandate of 18 U.S.C. § 3161(h)(6) that "an exclusion applicable to one defendant applies to all codefendants," Novak, 715 F.2d at 815 (quotation omitted), Erby makes the unavailing argument that the motions Davis filed

---

[2] Though Erby's trial date was in fact postponed even further by his own motions for continuance, he concedes that all days between September 18, 2008, and his eventual trial were excludable and, thus, give rise to no speedy trial problem.

after participating in a proffer interview with the Government on May 6, 2008 should not be excludable as to Erby because it was clear from that time that the two would not be tried jointly. We disagree. A proffer interview is merely an opportunity for a defendant to explore the possibility of cooperating with the Government to resolve the case without trial. Thus, it remained the case that Davis would be tried jointly with Erby until such time as Davis officially waived his right to a trial by entering a guilty plea on September 30, 2008.

Accordingly, we conclude that the District Court committed no error in refusing to dismiss the indictment against Erby pursuant to the Speedy Trial Act.

B.

Erby's second challenge on appeal is that the District Court improperly permitted the Government to introduce evidence of the July 24, 2007 drug transaction between Bonnano and an undercover agent at trial, pursuant to Federal Rule of Evidence 404(b). Specifically, Erby contended at trial, after trial, and again on appeal, that the District Court should have excluded the evidence in question because Erby took no direct part in this particular transaction—indeed, he was not part of the conspiracy at the time—and, thus, its probative value was substantially outweighed by its prejudicial effect.

"We review the District Court's decision to admit evidence under Rule 404(b) for an abuse of discretion, which may be reversed only when clearly contrary to reason and not justified by the evidence." United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001) (quotation marks omitted). Applying this standard, we conclude that the District Court

8

did not abuse its discretion in admitting testimony about the July 24, 2007 transaction as background evidence to explain how Erby came to be involved in the conspiracy.

Rule 404(b) prohibits the use of evidence of "other crimes, wrongs, or acts" to prove the character of a person. Thus, the "threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Butch, 256 F.3d at 175. We consider four factors in determining whether evidence is admissible under Rule 404(b):

> (1) a proper evidentiary purpose; (2) relevance under Rule 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under Rule 403; and (4) a limiting instruction concerning the purpose for which the evidence may be used.

Id.

In this case, the District Court properly found that evidence of the July 24, 2007 transaction was relevant and admissible to provide necessary background information to the conspiracy count, to show a relationship between Erby and his co-conspirators, and to help the jury understand how Erby became involved in the conspiratorial scheme. See, e.g., United States v. Watkins, 591 F.3d 780, 784 (5th Cir. 2009) ("Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the appellant became a member."). The District Court also properly concluded that the probative value of the evidence was substantial, as it provided an explanatory context for Erby's role in the conspiracy that would otherwise be missing from the evidence. Introduction of the evidence had minimal, if any, prejudicial effect because the Government emphasized throughout trial that Erby was not directly involved

9

in the July 24, 2007 transaction, nor had he even become a participant in the conspiracy as of that time. Moreover, the District Court cured any prejudice that may have resulted from the presentation of the challenged evidence when it provided the jurors with a proper limiting instruction, alerting them to the narrow purpose for which they could consider the July 24, 2007 transaction, as against Erby.

On this record, we cannot conclude that the District Court abused its discretion in admitting the challenged evidence. And having concluded that the District Court did not err in admitting the evidence, we must also conclude that the District Court did not err in denying Erby's motion for a new trial on that basis.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.