811 F.2d 190
 The UNITED STATES
v.
Dean K. FELTON, Nancy E. Bruce, John Zorak a/k/a Johnny,
Anthony Serrao, a/k/a Buddy, Richard Cox a/k/a
Ricky, James Thurman, John Hathorn.
Dean K. FELTON, Appeal of
Nancy E. BRUCE, Appeal of
 Nos. 85-3303, 85-3304.
 United States Court of Appeals,
Third Circuit.
 Originally Argued Jan. 16, 1986.
Resubmitted to the Original panel
July 10, 1986.
Argued in Banc Nov. 13, 1986.
Decided Jan. 30, 1987.
As Amended Feb. 6, 1987.
 
 W. Thomas McGough, Jr. (argued), Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellant Dean K. Felton.
 Kim Wm. Riester, Scott & Vogrin, Pittsburgh, Pa., for appellant Nancy Bruce.
 J. Alan Johnson, U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee U.S.
 Originally Argued Jan. 16, 1987
 Before SEITZ and GIBBONS, Circuit Judges, and GERRY,* District Judge.
 Resubmitted to the Original Panel July 10, 1986
 Argued In Banc Nov. 13, 1986
 Before ALDISERT, Chief Judge, and SEITZ, ADAMS**, GIBBONS, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Defendants contend that their Speedy Trial rights were violated because the district court used an excessively long time to decide their pretrial motions. After a careful review of the record, we conclude that under several different methods of computing excludable time, the limits of the Speedy Trial Act were not exceeded. To forestall possible delays contrary to the spirit of the Act, in future cases we recommend that district courts in this circuit adopt local rules setting time limits for the period between filing pretrial motions and hearings. Rejecting other allegations of error here, we will affirm the defendants' convictions.
 
 
 2
 Dean Felton, Nancy Bruce, and others were convicted on various counts of violations of 21 U.S.C. Secs. 841, 843, 846, and 848 (1982) growing out of the distribution of marijuana.
 
 
 3
 This was the second time that Felton had been found guilty of a drug-related crime. The first conviction followed a June 28, 1979 federal grand jury indictment against him and six other individuals. Count I of that four-count indictment charged a conspiracy to distribute marijuana in violation of 21 U.S.C. Sec. 846, running from May 24, 1979 to June 4, 1979. Count IV charged Felton with possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Trial began on May 11, 1981, but was limited to Count IV because the government had dismissed the other three counts after the district court granted a suppression motion. Felton was convicted, and this court affirmed by Judgment Order on March 26, 1982. United States v. Felton, Nos. 81-2135, 81-2148 (3d Cir. March 26, 1982).
 
 
 4
 On May 13, 1981, while the trial was in progress, Pennsylvania state police found marijuana both in a warehouse leased by Felton in Kutz Industrial Park in McKees Rocks, near Pittsburgh, and at a private residence linked to defendants. Felton was arrested the next day as he entered the federal courthouse for continuation of his trial. He was charged under Pennsylvania law with conspiracy and substantive drug offenses.
 
 
 5
 On September 17, 1981, the state district attorney moved ex parte to dismiss the charges because the United States Attorney was undertaking the prosecution. When Felton, then in federal custody, learned of the state dismissal, he objected and alleged that his rights to a speedy trial were being violated. The investigation nevertheless was transferred to the United States Attorney.
 
 
 6
 Felton served his sentence for the 1979 charges and was released from prison on March 5, 1983. Twenty-six days later, a federal grand jury handed down a ten-count indictment, No. 83-49, against Felton and six others, including Bruce, Cox, Serrao, and Hathorn. These charges were based in part upon the seizure of marijuana at the Kutz Industrial Park by the state police on May 13, 1981. Count I charged a conspiracy to distribute marijuana lasting from early 1979 until May 13, 1981. Count II charged Felton with engaging in a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848. Other counts charged possession of marijuana with intent to distribute. Still others complained of use of the telephone in violation of 21 U.S.C. Sec. 843(b).
 
 
 7
 Felton appeared before a federal magistrate on April 1, 1983, and was arraigned on April 11. With the exception of Cox, all other named defendants were arraigned by May 20, 1983.
 
 
 8
 The trial on this indictment began on April 1, 1985, two years after Felton's initial appearance before a magistrate. All defendants were convicted and sentenced. Felton received a general sentence of ten years on all counts; Bruce received a lesser sentence.
 
 
 9
 Before their cases came to trial, Felton and Bruce asserted that their rights under the Speedy Trial Act had been violated and demanded the indictment be dismissed. The district court denied their motions. Although Felton and Bruce have presented a number of contentions on appeal, we devote most of the discussion to the Speedy Trial Act issue.[1]
 
 I.
 
 10
 The Speedy Trial Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant ... shall commence within seventy days ... from the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. Sec. 3161(c)(1). Numerous exclusions, however, give flexibility to this facially rigid seventy-day period. See 18 U.S.C. Sec. 3161(h).[2] If the defendant is not brought to trial within seventy days, as augmented by allowable exclusions, the court must dismiss the indictment on motion of the defendant. 18 U.S.C. Sec. 3162(a)(2).
 
 
 11
 In the district court Felton argued that because the conspiracy alleged in the second federal indictment, No. 83-49, was the same as that charged in the first, No. 79-121, the speedy trial clock began to run in 1979, when he was arraigned on the first indictment. The district court agreed that at least Counts I and II of No. 83-49, the conspiracy and continuing criminal enterprise charges, related back to the first indictment. United States v. Felton, 592 F.Supp. 172, 182 (W.D.Pa.1984).
 
 A.
 
 12
 The district court discussed two justifications for denying Felton's motion to dismiss. Relying on United States v. Budzyna, 666 F.2d 666 (1st Cir.1981), the court first concluded that the violation alleged in the 1983 indictment should be deemed a 1979 charge for purposes of sanctions under the Speedy Trial Act because both indictments described the same conspiracy. 592 F.Supp. at 183. See 18 U.S.C. Secs. 3162(a)(2), 3163(c).
 
 
 13
 Based on its characterization of indictment No. 83-49 as one of 1979 vintage, the district court held that, regardless of the amount of time that might have run on the speedy trial clock, no sanctions would apply. That analysis rested on Sec. 3163(c) of the Act, which provides that the sanctions "become effective and apply to ... indictments filed, on or after July 1, 1980." 18 U.S.C. Sec. 3163(c). The court concluded that consistency required relation back not only of the violation alleged but also of the lack of sanctions available and therefore the indictment should not be dismissed.
 
 
 14
 In Budzyna, the Court of Appeals for the First Circuit held that the dismissal sanction was inapplicable to a superseding indictment filed after July 1, 1980. There, the original charges had been filed before the effective date of the mandatory dismissal sanction. The superseding indictment, however, constituted a mere amendment and related back to the earlier date. In that instance, it was not necessary to hold that a new indictment could relate back--instead, the court decided only to allow retroactive effect to a superseding indictment that reformulated the earlier charges.
 
 
 15
 Because that circumstance is not present here, Budzyna does not apply. Indictment No. 83-49 was filed after July 1, 1980, and threatened Felton with jeopardy entirely apart from that presented by No. 79-121, for which his jail sentence had already been served. Indictment No. 83-49, which governs here, clearly falls within the purview of the plain language of the Act applying dismissal sanctions to indictments filed after July 1, 1980. Consequently, denial of Felton's motion cannot be based on the Budzyna approach.
 
 B.
 
 16
 In the alternative, the district court accepted Felton's "tacking" argument that as to Counts I and II of No. 83-49, the beginning point for calculating chargeable time was the date on which the 1979 indictment was returned. After applying various exclusions permitted by the Act, the calculation established that only fifty-two days had elapsed under No. 79-121 and that no time was assessable under No. 83-49. Consequently, the time for bringing Felton to trial on Counts I and II of No. 83-49 had not expired. In addition, because it determined that no days were chargeable against No. 83-49, the court held that the period for bringing Felton and Bruce to trial on all the counts of that indictment had not expired. United States v. Felton, 612 F.Supp. 599, 603 (W.D.Pa.1985).
 
 
 17
 Defendants disagree with the district court's conclusion that no time was attributable to the 1983 indictment and focus specifically on the period between September 25, 1983 and April 24, 1984.[3]
 
 
 18
 Felton makes two arguments in support of dismissal. He contends that No. 83-49 should be dismissed in its entirety because the statutory limit was exceeded. He also asks that Counts I and II of No. 83-49 be stricken because more than seventy days elapsed with respect to those charges when the non-excludable days of No. 79-121 are "tacked" to those under the 1983 indictment. Bruce joins Felton only in the first contention because she was not a defendant under No. 79-121 and therefore cannot assert a "tacking" claim.
 
 II
 
 19
 The Speedy Trial Act lists certain delays that are excluded in calculating time chargeable against the seventy-day limit in Sec. 3161(c). Some of these are particularly applicable to pretrial proceedings.
 
 A.
 
 20
 Section 3161(h)(1)(F) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. Sec. 3161(h)(1)(F).
 
 
 21
 Thus, subsection (F) excludes time in two situations. First, if the court holds a hearing on the motion, all of the days between the filing of the motion and the conclusion of a hearing are excluded. See Henderson v. United States, --- U.S. ----, ----, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986). Interpreting that provision, the Supreme Court has held that subsection (F) also excludes any time following the hearing that is required for filing briefs and additional materials necessary for proper disposition of the motion. --- U.S. at ----, 106 S.Ct. at 1877.
 
 
 22
 Second, if the court does not hold a hearing, subsection (F) excludes the period from the filing of the motion until the parties complete the submissions necessary for the court to reach a decision. --- U.S. at ----, 106 S.Ct. at 1876. See also S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979), reprinted in A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, 113-15, Federal Judicial Center (1980).
 
 
 23
 Before the Supreme Court decided Henderson, other courts had held, as did we in United States v. Novak, 715 F.2d 810 (3d Cir.1983), cert. denied sub nom. Arabia v. United States, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984), that the statute imposed a reasonableness limitation on the length of subsection (F) exclusions. See, e.g., United States v. Ray, 768 F.2d 991 (8th Cir.1985); United States v. Mitchell, 723 F.2d 1040 (1st Cir.1983); United States v. Janik, 723 F.2d 537 (7th Cir.1983); United States v. Cobb, 697 F.2d 38 (2d Cir.1982).[4]
 
 
 24
 Three other courts had rejected the reasonableness criterion and held that subsection (F) excludes automatically and without qualification the entire period between filing the motion and conclusion of the hearing. United States v. Henderson, 746 F.2d 619 (9th Cir.1984), aff'd, --- U.S. ----, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); United States v. Stafford, 697 F.2d 1368 (11th Cir.1983). Cf. United States v. Horton, 705 F.2d 1414 (5th Cir.), cert. denied, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983).
 
 
 25
 In Henderson, the Supreme Court resolved the conflict between the circuits. The Court stated that "[t]he plain terms of the statute appear to exclude all time" from the filing through the hearing and the completion of post-hearing submissions "whether that hearing was prompt or not." --- U.S. at ----, 106 S.Ct. at 1874-5. The Court determined also that subsection (F) "does not require that a period of delay be 'reasonable' to be excluded." --- U.S. at ----, 106 S.Ct. at 1875.[5]
 
 
 26
 After surveying the Act's legislative history, the Court commented: "Congress was aware of the breadth of the exclusion" in subsection (F) but expected that "any limitations" would be imposed by circuit or district court rules "rather than by the statute itself." --- U.S. at ----, 106 S.Ct. at 1875. The Court suggested that, consistent with Congress' intent, " 'potentially excessive and abusive use of this exclusion [can] be precluded by district or circuit guidelines, rules, or procedures relating to motions practice.' " --- U.S. at ----, 106 S.Ct. at 1875, quoting H.R.Rep. No. 390, 96th Cong., 1st Sess. 10, reprinted in 1979 U.S. Cong. & Ad. News 805, 814. See also S.Rep. No. 212, 96th Cong., 1st Sess. 33-34 (1979).
 
 B.
 
 27
 The district court in Henderson had adopted a local rule providing that "all pretrial hearings shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket." 106 S.Ct. 1880 n. 2 (White, J. dissenting). The Henderson Supreme Court majority deferred to the court of appeals, noting "[i]t found no violation of the rule." --- U.S. at ---- n. 9, 106 S.Ct. at 1875 n. 9. Actually, the court of appeals simply had noted the existence of local rules without quoting or discussing any of them. 746 F.2d at 623. The Supreme Court stated that "it would be useful in the future for circuit and district court rules to include specific time tables, thereby giving substance to the obligations of prosecutors and defense counsel under the Speedy Trial Act." 106 S.Ct. at 1875.
 
 
 28
 The District Court for the Western District of Pennsylvania, where Felton was tried, had adopted a rule with language identical to that discussed by the Supreme Court. The question then arises whether the local rule here acted as a limitation on the open-ended provisions of subsection (F). The language of the rule is general and vague. It gives neither guidance nor notice to either trial judge or counsel. "As soon ... as possible consistent with the priority of other matters" provides neither beginning nor ending points for exclusion of time. The rule is no more helpful to the parties than the "reasonable" restriction imposed on subsection (F) by courts of appeals and rejected in Henderson.
 
 
 29
 Moreover, to give effect to the local rule here would be inconsistent with the Supreme Court's resolution of the issues in Henderson. It is significant that there, in rejecting the dissent's suggestion that the local rule filled the gap in subsection (F), the majority instead emphasized that district court rules should "include specific time tables." The same deficiencies in the local rule that existed in Henderson are present here. We are persuaded that fidelity to the spirit of the Supreme Court's holding in Henderson requires that we reject the notion that the precatory local rule at issue here must be read into subsection (F).[6]
 
 C
 
 30
 The defendants contend that Henderson should not be applied retroactively. We are not persuaded by this contention. Generally, an appellate court applies the law as it exists during the time of the appeal. United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). Even in situations where an exception is made and retroactivity is not imposed, the new decision usually is applied to cases then on appeal. United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). This case was on appeal when the Supreme Court decided Henderson, and on that basis also we hold that it does apply.
 
 D.
 
 31
 Another motion practice provision that has some application to this case is 18 U.S.C. Sec. 3161(h)(1)(J), which excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." Pretrial motions are included within the scope of subsection (J). See United States v. Hines, 728 F.2d 421, 426 (10th Cir.), cert. denied, 467 U.S. 1246, 104 S.Ct. 3523, 82 L.Ed.2d 831 (1984); United States v. Janik, 723 F.2d 537, 543 (7th Cir.1983); United States v. Horton, 705 F.2d 1414, 1416 (5th Cir.), cert. denied, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983); United States v. Stafford, 697 F.2d 1368, 1373 (11th Cir.1983); United States v. Bufalino, 683 F.2d 639, 642 (2d Cir.), cert. denied, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). See also Henderson v. United States, --- U.S. at ----, 106 S.Ct. at 1876. Cf. United States v. Tertrou, 742 F.2d 538 (9th Cir.1984).
 
 
 32
 If the motion is very simple or routine, Congress has cautioned that the period "should be considerably less than 30 days." S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979). But when multiple motions have been filed, some courts have concluded that the thirty-day limitation of subsection (J) does not apply inflexibly. See United States v. Anello, 765 F.2d 253, 257 (1st Cir.), cert. denied sub nom., Wendolkowski v. United States, --- U.S. at ----, 106 S.Ct. 411, 88 L.Ed.2d 361 (1985); United States v. Tibboel, 753 F.2d 608, 611 (7th Cir.1985). See also United States v. Janik, 723 F.2d at 544. In view of our disposition of this case, we need not, and do not, decide whether the filing of multiple motions extends the thirty-day limit set out in subsection (J)[7]. We will, however, assume arguendo that the thirty-day limit applies.
 
 III
 
 33
 With this partial review of the statute behind us, we look to the facts as they affect the defendants' speedy trial claims.
 
 A.
 
 34
 We first take up Felton's claim. In fairness to the district court, we must note that defendants deluged it with motions before the hearings scheduled for July 14 and 15, 1983. At the conclusion of those hearings the district judge had ruled on many of the motions but approximately twenty-five, including the most complicated ones, remained for decision. The judge advised counsel that if he required further argument he would notify them.
 
 
 35
 Briefs on the remaining motions were filed on August 26, 1983, and the district judge would have had, arguendo, at least an additional thirty days to resolve these matters. However, on August 16, 1983, even before the filings on the earlier motions had been completed, Felton moved to disqualify Bruce's counsel. On November 21, 1983, Felton filed a motion to sever codefendant Cox, and on February 17 submitted a renewed motion to dismiss Counts I and II under the Speedy Trial Act.
 
 
 36
 The court did not hold hearings on those motions until March 22, 1984. Post-hearing submissions were filed on May 7, 1984, and the motions were denied on May 18, 1984. Felton rests his case on the proposition that all of the time between September 25, 1983 and April 25, 1984 should be charged to the government. However, that contention cannot survive Henderson's strict reading of subsection (F) (hearing time) which excludes the period from the date of filing a motion until at least the date of the hearing. In this instance, Henderson removes from the computation all of the days from August 16, 1983 when Felton filed his motion until May 7, 1984 when the post-hearing submissions were completed. Consequently, Felton's argument fails, and he is not entitled to credit for delay between September 1983 and April 1984.
 
 
 37
 Felton also contends that the district court erred in excluding six days from October 27, 1980 to November 2, 1980. We issued our mandate in Felton's earlier appeal on October 24, 1980. On October 27, 1980, the government filed a motion to stay or recall the mandate. That motion was granted, and we did not reissue the mandate until December 16, 1980. Felton contends that the time between October 27, 1980 and November 2, 1980 should be chargeable to the government.
 
 
 38
 Section 3161(h)(1)(E) excludes "delay resulting from any interlocutory appeal." Section 3161(e) provides that if a defendant is to "be tried again following an appeal," the trial is to commence within seventy days "from the date the action occasioning the retrial becomes final." Although there is no "retrial" in this case, consistency and clarity require that (h)(1)(E) and 3161(e) be applied in identical fashion.
 
 
 39
 The action of a court of appeals does not become final until its mandate is issued. The 1984 Guidelines to the Administration of the Speedy Trial Act of 1974, as formulated by the Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, refer to the date the district court receives the mandate. See also United States v. Gilliss, 645 F.2d 1269 (8th Cir.1981). However, we agree with the district court that the language of the statute ("the date the action ... becomes final") requires that the date of issuance be the point of departure. See United States v. Rush, 738 F.2d 497, 509 (1st Cir.1984), cert. denied, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); United States v. Ross, 654 F.2d 612, 616 (9th Cir.1981), cert. denied, 455 U.S. 926, 102 S.Ct. 1290, 71 L.Ed.2d 470 (1982); United States v. Russo, 550 F.Supp. 1315, 1319 (D.N.J.1982), aff'd, 722 F.2d 736 (3d Cir.1983), cert. denied, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 179 (1984).
 
 
 40
 In the case at hand, the question is whether the exclusion extends to any of the time that elapsed between the date this court originally issued its mandate and when we later reissued it. The purpose of Sec. 3161(e) and subsection (E) is to remove from the Speedy Trial Act calculation periods when the district court justifiably cannot try the defendant's case. When the matter is on appeal, the district court lacks power to proceed, and logically that time is excluded.
 
 
 41
 The mandate of the court of appeals serves to fix with certainty the point at which jurisdiction passes from the appellate to the trial court. Because the mandate was prematurely issued and recalled, jurisdiction finally shifted when the mandate was reissued on December 16. Only at that point did the appeal process become complete and the excludable time end. We adopt that approach for both Sec. 3161(e) and subsection (E). Hence, the district judge properly did not again begin counting the days until the mandate reissued.
 
 
 42
 To summarize, even assuming arguendo that Felton may "tack" time relating back to the 1979 charges, in order to prevail he must have accrued additional chargeable time under the 1983 indictment. He has not done so, however, because both the period from October 27, 1980 to November 2, 1980 and from September 25, 1983 to April 24, 1984 are properly excluded. Consequently, Felton has failed to establish a claim under the Speedy Trial Act.
 
 B.
 
 43
 Bruce also has failed to establish her claim. She filed a motion for severance from Felton on August 1, 1983. On August 16, 1983, Felton moved to disqualify Bruce's attorney on the ground that he had previously represented Felton in a related matter and had commented at the July hearings that the Bruce defense might be adverse to that of Felton.
 
 
 44
 Bruce argues that because no hearing was ever held on her motion, it was taken under advisement on September 14, 1983 at the latest, and therefore should have been decided under subsection (J) (deliberation time) within thirty days thereafter.
 
 
 45
 At this juncture we must decide the applicability of yet another exclusion, Sec. 3161(h)(7), which applies to a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not yet run and no motion for severance has been granted." Bruce and Felton satisfy that description.
 
 
 46
 In Novak we concluded that, subject to the reasonableness requirement, "an exclusion under subsection (F) applicable to one defendant would, by virtue of subsection (h)(7) be applicable to all his codefendants." 715 F.2d at 815. After reviewing the legislative history we concluded that Congress had desired to continue the preference for joint trials and had "reaffirmed its intent that the joinder exclusion be expansively construed." Id. at 814.
 
 
 47
 In pressing her claim for chargeable time, Bruce fails to consider the relationship between her severance motion and Felton's motion to disqualify her counsel. The Felton motion required a hearing, which was held on March 22, 1984, and that motion was granted on April 6, 1984. Bruce's motion was denied on May 18, 1984.
 
 
 48
 Although the submissions on Bruce's motions were completed in September 1983, it was reasonable to expect that testimony on the disqualification issue at the March hearing would have a bearing on her severance motion. This proved to be the case. At that hearing, there was a reference to the severance motion during the testimony of Bruce's attorney. In addition, during the hearing the court commented that some adversity between Bruce and Felton had been established. The Bruce severance motion therefore did not stand separate and apart from Felton's disqualification motion.
 
 
 49
 In United States v. Carter, 803 F.2d 20 (1st Cir.1986), the court concluded that the time before a hearing on suppression motions could also be excluded under subsection (F) (hearing time) with respect to a severance and other motions for which submissions had been completed earlier. Because the severance motion and the others were dependent to some extent on the outcome of the suppression hearings, the court determined that the time for disposition under subsection (J) (deliberation time) did not begin to run until the district judge ruled on the suppression issue. 803 F.2d at 22. Carter relied on Henderson's observation that in cases where a hearing is not held, subsection (F) excludes "all time that is consumed in placing the trial court in a position to dispose of a motion." --- U.S. ----, 106 S.Ct. at 1877 (emphasis added). See Carter, 803 F.2d at 22.
 
 
 50
 We accept Carter's rationale and reject Bruce's contention that under subsection (J) (deliberation time) the time on her severance motion started in September 1983. Rather, the clock began to run, at the very earliest, on the day after the hearing, March 22, 1984. Using that date as an outer limit and thus not allowing any additional time at all under subsection (J), despite the district court's entitlement to it, nevertheless does not aid Bruce. Starting the clock on March 23, rather than April 6 when Felton's disqualification motion was decided, benefits Bruce but only by accruing thirty-three chargeable days between March 22, 1984 and April 25, 1984, the day when codefendant Hathorne filed his notice of appeal to this court. That appeal marks the beginning of additional excludable time as to all defendants under Sec. 3161(h)(1)(E), (appeal delay).
 
 
 51
 Therefore, Bruce is unable to establish sufficient chargeable time to qualify for a dismissal under the Speedy Trial Act.[8]IV
 
 
 52
 In Novak, we recognized that subsection (F) (hearing time), if read as completely open-ended, would expose a loophole in the Speedy Trial Act that could frustrate its aims. For that reason, we applied a reasonableness standard. Henderson took the position that the statutory language did not impose a reasonableness limitation on subsection (F). As noted earlier, however, the Supreme Court commented that Congress envisioned limitations that would be imposed by district or circuit rules.
 
 
 53
 To implement that expectation, we recommend that the district courts within the Third Circuit undertake revisions of their local rules to provide appropriate, specific time limitations for actions governed by subsection (F), in harmony with other excludable time, and subject to sanctions as provided in the Speedy Trial Act.
 
 
 54
 Section 3165(d) provides that each district court may modify its plan at any time by following specified procedures. Section 3166(a) requires that plans include a description of time limits intended to expedite the trial or disposition of criminal cases "consistent with the time limits and other objectives of this chapter." The statute itself provides for sanctions under Sec. 3162(a)(2) to enforce the time limits for bringing a case to trial.
 
 
 55
 We conclude that to be consistent with the objectives of the Act, local rules setting specific time limits for action under subsection (F) should provide that a lapse of time beyond that specified in the rule is chargeable against the seventy-day limitation. The time set out in the rules, however, would be subject to modification by proper invocation of appropriate provisions of the Act, e.g., Sec. 3161(h)(8)(A), (B) (interest of justice continuance).
 
 
 56
 The revised rules should be in such form and in such detail that counsel and the court may determine with reasonable certainty whether elapsed time is chargeable and may accurately calculate the number of days at issue. It is important that all concerned know when the clock stops running, and, perhaps even more essential, when it resumes.[9]
 
 V
 
 57
 The defendants have also raised a number of challenges to various other rulings by the district court. Felton contends that:
 
 
 58
 1. His constitutional right to a speedy trial under the Sixth Amendment was violated by pre-indictment delays;
 
 
 59
 2. The district court erred in refusing to suppress the fruits of the search conducted at the Kutz warehouse;
 
 
 60
 3. The district judge erred in failing to instruct the jury on the mandatory sentence applicable to a conviction under 21 U.S.C. Sec. 848;
 
 
 61
 4. Prosecution under Count II, after the earlier conviction at No. 79-121, violated double jeopardy.
 
 Bruce contends that:
 
 62
 1. The trial court erred in declining requested jury instructions about introduction of evidence of prior acts in the government's case contrary to the prosecution's proffer;
 
 
 63
 2. The trial court erred in denying the motion for a directed verdict based on lack of evidence of her intention to possess controlled substance (Count 10);
 
 
 64
 3. The verdict of guilty of both the crimes of conspiracy (Count 1) and possession with intent to distribute controlled substances (Count 10) was against the weight of the evidence as a matter of law;4. The district court abused its discretion in refusing to sever her case from her codefendants, particularly Felton;
 
 
 65
 5. The district court erred in failing to suppress evidence.
 
 
 66
 We have reviewed these additional contentions by Felton and Bruce, and we find them to be without merit.
 
 
 67
 We decline to rule on Bruce's claim of ineffectiveness of counsel and defer that issue without prejudice to a separate action under 28 U.S.C. Sec. 2255. See United States v. Sturm, 671 F.2d 749 (3d Cir.), cert. denied, 459 U.S. 842, 103 S.Ct. 95, 74 L.Ed.2d 86 (1982).
 
 
 68
 Accordingly, the judgment of the district court will be affirmed.
 
 APPENDIX
 Speedy Trial Act Of 1974, As Amended
 Sec. 3161. Time limits and exclusions
 
 69
 (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.
 
 
 70
 (e) If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.
 
 
 71
 (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
 
 
 72
 (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
 
 
 73
 (E) delay resulting from any interlocutory appeal;
 
 
 74
 (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
 
 
 75
 (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
 
 
 76
 (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
 
 
 77
 (B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.
 
 
 78
 (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.
 
 
 79
 (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such a continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.
 
 
 80
 (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:
 
 
 81
 (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuance of such proceeding impossible, or result in a miscarriage of justice.
 
 
 82
 (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
 
 
 83
 (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
 
 
 84
 (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.
 
 
 85
 GIBBONS, Chief Judge, with whom SEITZ and HIGGINBOTHAM, Circuit Judges, join, dissenting in No. 85-3003, No. 85-3004
 
 
 86
 The law is no stranger to ironies, but it would take the talents of a Peter Finley Dunne, a Lewis Carroll, a Samuel Clemens or an Art Buchwald to explain that a statute called the Speedy Trial Act has as its chief, if not its sole, practical purpose the justification of post-indictment delays in the disposition of criminal cases. Congress may not have been completely literal in its choice of a title for the Act, but I do not believe it was jesting. The interpretation of the Act made by the majority, however, reduces the Act to the level of a joke, ostensibly because the opinion in Henderson v. United States, --- U.S. ----, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), requires as much. That case, the majority suggests, overruled our recent decision in United States v. Novak, 715 F.2d 810 (3d Cir.1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). The court reads more into Henderson than can legitimately be found there. If there is no Speedy Trial Act violation in this case, it is hard to imagine a set of circumstances in which, in the real world of the federal criminal justice process, one will be found. The tongue-clicking admonition in Part IV of the majority opinion that the district courts ought to do something about what it describes as a "loophole" in the Act is small comfort to the litigants before us. It is, moreover, a toothless suggestion, unless we are ready to say that in exercising our supervisory authority we are going to insist that Speedy Trial Plans include meaningful time limits. We exercised that supervisory authority in Novak, interpreting the Speedy Trial Plan in the Western District of Pennsylvania (Speedy Trial Plan) as including a meaningful time limit for the disposition of motions. By overruling Novak, we signal to the district courts that the suggestion in Part IV is not seriously intended. I dissent.
 
 I.
 
 87
 On May 14, 1981, while on trial in federal court for possession of marijuana with intent to distribute, Dean Felton was arrested by the Pennsylvania state police and charged under Pennsylvania law with possession of marijuana, possession with intent to distribute and conspiracy. Felton was convicted of the federal offense and on July 21, 1981 was sentenced to a jail term, a fine, and a 20-year special parole term. Trial on the Pennsylvania charges was scheduled for September 21, 1981, almost three months after the imposition of his federal sentence. There is no question, therefore, that he was available for state trial on September 21, 1981. On September 17, 1981, however, the District Attorney of Allegheny County moved ex parte to dismiss those charges because their prosecution was being assumed by the United States Attorney. When Felton, who by then was in federal custody, learned of the dismissal he objected that the dismissal and transfer of the charges to the federal authorities violated his state and federal rights to a speedy trial. The file was nevertheless transferred to the Office of the United States Attorney, where it languished while Felton served his sentence.
 
 
 88
 Felton was released from federal custody on March 5, 1983. Twenty-six days after his release a federal grand jury handed down indictment No. 83-49, which produces this appeal. Thus the indictment did not come down until twenty-two and a half months after his May 14, 1981 arrest. Felton made his initial appearance on indictment No. 83-49 on April 1, 1983, and was arraigned on April 11. With the exception of co-defendant Richard Cox, all other defendants were arraigned by May 20, 1983.
 
 
 89
 Trial on indictment No. 83-49 commenced on April 1, 1985, six weeks shy of five years after Felton's arrest by the Pennsylvania state police on the virtually identical charges, and two years to the day after his first appearance before a United States Magistrate. Felton, and defendants Nancy E. Bruce and Anthony Serrao moved pre-trial to dismiss the indictment on speedy trial grounds, relying both on the Speedy Trial Act and on the speedy trial clause of the sixth amendment.[1]
 
 II.
 
 90
 The majority holds that despite the provision in the Speedy Trial Act that the trial of a defendant "shall commence within seventy days ... from the date the defendant has appeared before a judicial officer...." 18 U.S.C. Sec. 3161(c)(1) (1982), a trial commencing 730 days thereafter, or more than ten times later than the basic standard in the Act, was nonetheless timely. Moreover, under the majority's rationale a trial commencing 1730 days after arraignment would also qualify, for the majority's interpretation of 18 U.S.C. Sec. 3161(h)(1)(F) (1982) would apply to such a delay so long as the court delayed in setting down a pending motion for hearing for that period. Thus for all intents and purposes, application of the Speedy Trial Act in any case in which any pretrial motion is made by any party, absent a local plan stating otherwise, is entirely within the control of the trial court. This seems on its face to be a curious intention to attribute to a Congress concerned with "reducing crime and the danger of recidivism by requiring speedy trials." H.R.Rep. No. 1508, 93d Cong., 2d Sess. 8, reprinted in 1974 U.S.Code Cong. & Admin.News 7401, 7402. Nevertheless, the majority is correct that the Henderson majority interprets section 3161(h)(1)(F) as authorizing such a result, at least absent a local plan prohibiting potentially excessive and abusive use of this exclusion.
 
 
 91
 The majority in the instant case, however, goes further in eviscerating the Speedy Trial Act than did the Henderson majority. Justice Powell in Henderson stated:
 
 
 92
 Congress clearly envisioned that any limitations should be imposed by circuit or district court rules rather than by the statute itself.[9] Such rules, developed pursuant to Sec. 3166(f), should provide the assurance of a speedy disposition of pretrial motions.
 
 
 93
 9. The dissent relies on district court rules as a basis for invoking petitioners' standard. Post, at 1880, n. 2. The interpretation of the local rule, however, is a matter on which we should defer to the Court of Appeals for the Ninth Circuit. It found no violation of the rule.
 
 
 94
 --- U.S. ----, 106 S.Ct. at 1875. Thus the Henderson majority explicitly acknowledged that local rules may be interpreted as imposing limitations on the length of delay in scheduling hearings on motions. That interpretation of section 3166(f), making local rules the sole control over unfettered trial court power to disregard the Act, was not persuasive to the Henderson dissenters, but at least it has the virtue of preserving some substance of Congressional intention. Moreover it is consistent with the fact that, prior to the passage of the Speedy Trial Act, local plans for achieving prompt disposition of criminal cases, adopted pursuant to Fed.R.Civ.P. 50(b), were already in place in most districts. Thus it is conceivable that in enacting section 3166(f) Congress, aware of the manner in which Rule 50(b) plans dealt with the problem of delay in scheduling hearings on motions, decided that a legislative standard was unnecessary.
 
 
 95
 In Henderson, Justice Powell stated that the Supreme Court "should defer to the Court of Appeals" for the interpretation of local plans. See --- U.S. ----, 106 S.Ct. at 1875. This court of appeals had already interpreted the local plan for the Western District of Pennsylvania prior to the time Felton, Bruce, and Serrao were tried. In United States v. Novak, 715 F.2d 810 (3d Cir.1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984) we noted the requirement in p 4(f)(7) of the Speedy Trial Plan that "[a]ll pre-trial hearings shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket." 715 F.2d at 820 n. 15. That provision was relied upon to support a requirement that the district courts make specific and approximately contemporaneous findings as to the reasonableness of any extended exclusions for pretrial motions under subsection F. Id. at 820. This reasonableness limitation, we observed, was consistent with the Senate Committee's declaration that it did not "intend that additional time be made eligible for exclusion [under subsection (F) ] by postponing the hearing date ... of the motions beyond what is reasonably necessary." Id. at 819-20 & n. 15 (quoting S.Rep. No. 212, 96th Cong., 1st Sess. 33-34 (1979) (emphasis added)).
 
 
 96
 The court is sitting in banc in this case, and thus it would be free to overrule the interpretation of the Western District of Pennsylvania Plan announced in Novak. The majority does not, however, purport to do so. Had it taken that approach, the majority would have put itself in the unenviable position of having to support such action with reasons. That would be difficult in light of the concession in Part IV of the majority opinion that, absent the Novak interpretation of the Plan, there is "a loophole in the Speedy Trial Act that could frustrate its aims." 811 F.2d at 200. Nonetheless the majority has created such a loophole, quite plainly frustrating the purposes of the Act in this case by justifying a post-indictment delay more than ten times as long as the applicable statutory standard. Unable to offer any plausible reason for doing so, it makes the preposterous assertion that Novak is inconsistent with Henderson. The majority's reading of Henderson is so strained as to require quotation. In one paragraph the majority observes:
 
 
 97
 The Henderson Supreme Court majority deferred to the court of appeals, noting "[i]t found no violation of the rule." --- U.S. at ----, 106 S.Ct. at 1875 n. 9, 90 L.Ed.2d at 307 n. 9. Actually, the court of appeals simply had noted the existence of local rules without quoting or discussing any of them. 746 F.2d at 623. The Supreme Court stated that "it would be useful in the future for circuit and district court rules to include specific time tables, thereby giving substance to the obligations of prosecutors and defense counsel under the Speedy Trial Act." 106 S.Ct. at 1875.
 
 
 98
 811 F.2d at 196. Thus the majority notes that Justice Powell (1) misstated the holding of the court of appeals, and (2) suggested that specific timetables "would be useful." In the next paragraph, however, the court continues:
 
 
 99
 Moreover, to give effect to the local rule here would be inconsistent with the Supreme Court's resolution of the issues in Henderson. It is significant that there, in rejecting the dissent's suggestion that the local rule filled the gap in subsection (F), the majority instead emphasized that district court rules should "include specific time tables."
 
 
 100
 Id. Thus by slight of hand, or word, Justice Powell's misstatement of a court of appeals holding and his observation that specific timetables "would be useful"--a proposition that few would challenge--are transmogrified into a holding that any plan provision other than a specific timetable is totally unenforceable. The majority holds that not only are specific timetables useful, but they "should" be included. This sort of treatment of a relied-upon authority is hardly the kind of lesson the court in banc should be giving to the bar. No fair reading of the opinion of the court in Henderson suggests that it overruled our statement in Novak that the Western District Speedy Trial Plan is binding, not precatory.
 
 
 101
 The court had no difficulty interpreting it in Novak. Unlike the majority, I have no difficulty in finding manageable the Speedy Trial Plan's standard:
 
 
 102
 As soon ... as possible, consistent with the priorities of other matters.
 
 
 103
 Final Plan Pursuant to Speedy Trial Act of 1974, p 4(f)(7) (W.D.Pa.1980). Moreover the majority's holding that only specific timetables in a local plan will ever be enforceable is a thoroughly undesirable rule. One can agree with Justice Powell that specific timetables are useful only if one recognizes that some degree of flexibility is retained. Any timetable, if it is not going to list times so numerous as to be inconsistent with the spirit of the Speedy Trial Act, must be qualified to some extent. It will surprise the justices in the Henderson majority, I earnestly believe, to learn that their opinion makes unenforceable any plan which includes the flexibility necessary to make it workable.
 
 
 104
 One other point is suggested by the majority opinion although not discussed therein. The majority construes section 3161(h)(1)(F) as authorizing the indefinite postponement of hearings on pre-trial motions. There are, however, constitutional limits upon the power of Congress to confer such authority on the courts. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court, interpreting the speedy trial clause of the sixth amendment, stressed four factors relevant to the determination of a defendant's speedy trial claim: length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 530, 92 S.Ct. at 2192. The court declined to impose specific time limits. Id. at 523, 92 S.Ct. at 2188. Obviously the nonspecific standards of Barker v. Wingo must be applied whether or not Congress says so. Thus the interpretation of section 3161(h)(1)(F) in the majority opinion--that it prohibits anything other than a specific timetable--makes no sense. It does not solve the vagueness problem which the majority has conjured up, because Barker v. Wingo is as unspecific as the Western District of Pennsylvania Speedy Trial Plan. Even the adoption of a plan with specific timetables would not eliminate the necessity for considering the Barker v. Wingo standards because a timetable with specific, permitted delays that are long enough to afford the trial court needed flexibility, would in each specific application still have to satisfy the requirements of the sixth amendment. The majority holding, however, construes section 3161(h)(1)(F) as authorizing a totally open-ended delay, without further inquiry. Such an interpretation of the statute makes it facially unconstitutional. At the very least, the majority is obliged to say more about the defendants' sixth amendment contention than the naked assertion that "we find [it] to be without merit." 811 F.2d at 201. A post-arrest delay of almost five years and a post-arraignment delay of 730 days present sixth amendment questions which cannot be so cavalierly ignored.
 
 III.
 
 105
 I would avoid the lurking sixth amendment problems inherent in the majority's approach by applying the Novak holding that the Western District of Pennsylvania Speedy Trial Plan is enforceable. If it is enforceable, there is no doubt that it was violated by the 730 day post-indictment delay that occurred in this case. There is no way that the majority can piece together 660 days of excludable time except by holding that there is no limit on when the trial court may schedule a hearing on, and decide, a pretrial motion.
 
 A.
 
 106
 All co-defendants except Richard Cox, seven in all, were arraigned on indictment No. 83-49 by May 20, 1983. By July 1, 1983 there were pending in the district court thirty-five pre-trial motions seeking various forms of relief. The majority opinion notes that the defendants "deluged" the district court with motions. 811 F.2d at 197. An examination of the motions, however, discloses that they were what one might expect when seven co-defendants are before the court charged with a conspiracy to distribute marijuana five years earlier. Among them were motions by Felton to dismiss both under the Speedy Trial Act and the speedy trial clause of the sixth amendment and to dismiss on double jeopardy grounds. As the majority notes, id., ten motions were disposed of at hearings on July 14 and 15, 1983, leaving twenty-five pending, including Felton's speedy trial motion. Some of the pending motions had been filed as early as April 18, 1983. Another hearing was held on the pending motions on July 28, 1983, and the docket entry for that date contains the notation "Hearing on pretrial mts concluded CAV before Diamond, J."
 
 
 107
 Thereafter, defendant Bruce filed a severance motion. Felton filed a motion to disqualify defendant Bruce's counsel, and defendant Hathorn filed a double jeopardy motion. Felton and Bruce contend, and examination of the record confirms, that even allowing for post-hearing written submissions all pending motions, with the exception of Felton's motion to disqualify Bruce's counsel, must be deemed to have been under advisement no later than September 26, 1983.
 
 
 108
 The government responded to Felton's August 16 disqualification motion on August 25. Nothing more was done on this motion for seven months. Then on March 21, 1984 the court held a hearing, and on April 6, 1984 the court granted the motion. The government contends, and the majority rules, that the entire 217-day period between August 16, 1983 and March 21, 1984 is excludable under section 3161(h)(1)(F). The government also contends that the period between March 21, 1984 and April 6, 1984 is excludable under section 3161(h)(1)(J). I disagree.
 
 
 109
 The lapse of seven months violated the district court's guideline for the prompt disposition of criminal cases contained in paragraph 4(f)(7) of the Western District of Pennsylvania Speedy Trial Plan. As noted above, this plan requires that such hearings be held "as soon after the arraignment as possible." Speedy Trial Plan, p 4(f)(7). The hearing on the disqualification motion was not heard within this time frame. Because the seven-month delay goes beyond the bounds of what is permissible under the Speedy Trial Plan, it is not excludable under section 3161(h)(1)(F). In addition, because there do not appear to be any reasons of record why this motion could not have been timely resolved, only the thirty-day period from August 25 to September 24 is excludable under section 3161(h)(1)(F), and the thirty-day period from September 25 to October 25 is excludable under section 3161(h)(1)(J).
 
 
 110
 On November 3, 1983 the court sua sponte entered an order purporting to exclude time under numerous Speedy Trial Act exclusions. This order does not contain any findings that support a determination that the disqualification hearing was timely under the Speedy Trial Plan. The court relied, inter alia, on the fact that co-defendant Cox had not been apprehended. As I discuss infra, the government was dilatory in seeking Cox and consequently, even though that delay was not the fault of the district judge, the time for deciding the motion was not extended. The speedy trial clock commenced running on October 26, 1983, at least for purposes of sections 3161(h)(1)(F) and 3161(h)(1)(J). No new motion was made by any party until November 21, 1983 when Felton made a motion to supplement the record and a motion to sever Cox. Thus twenty-six days expired for purposes of those sections. Both of Felton's November 21, 1984 motions were unopposed. The motion to supplement the record was essentially a housekeeping matter which could in no way reasonably require retention under advisement for anything near the maximum thirty-day period in section 3161(h)(1)(J). The unopposed motion to sever Cox, discussed infra in connection with section 3161(h)(3), arguably required some judicial consideration because although the government did not oppose it, a severance of one defendant could result in two trials rather than one. Even if the United States is credited with the ten days permitted under Rule 24(2)(b) of the local rules of the Western District of Pennsylvania, see W.D.Pa.R. 24(2)(b) (1986), for the filing of a response, and with a maximum of thirty days excludable under section 3161(h)(1)(J), the severance motion should have been acted upon no later than December 30, 1983. It was not acted upon until March 31, 1984.
 
 
 111
 On December 28, 1983 Felton filed a second housekeeping motion to supplement the record. Crediting the United States with the ten days within which it could have filed opposing papers, the section 3161(h)(1)(F) exclusion ran to January 7, 1984. But since the motion was unopposed, no time past that date, or at best the day or two it might have taken the court to read the papers, can be deemed excludable under section 3161(h)(1)(J). Thus the speedy trial time clock commenced running no later than January 8, 1984.
 
 
 112
 No new motion was made by any party until February 17, 1984 when Felton filed a renewed motion to dismiss for a violation of the Speedy Trial Act. Thus, for purposes of section 3161(h)(1)(F), the thirty-nine days between January 9 and February 17, 1984 must be charged against the seventy days, for a total of sixty-five nonexcludable days.
 
 
 113
 The government's argument that a renewed motion to dismiss on speedy trial grounds should trigger a new section 3161(h)(1)(F) exclusion and a second thirty-day period during which the motion may be taken under advisement hardly seems consistent with the ostensible Congressional purpose in enacting the Speedy Trial Act. I do not find it necessary, however, to resolve the question whether the renewal of a motion that should have been decided long ago should give the United States and the court additional excludable time. In this case, the government's response to Felton's renewed motion was due on February 27, 1984. It was not filed until March 12, 1984. No justification appears of record for this delay of thirteen days. These thirteen days, when added to the sixty-five which had already expired, brings the chargeable delay to seventy-eight days. In addition, although a hearing on the motion was held on March 21, 1984, it was not decided until May 18, 1984. Under section 3161(h)(1)(J), the thirty-day period running from March 21 to April 20 is excludable. On April 24, Felton filed a motion to modify his bond. The motion was granted that same day. The three days between April 21 and April 24 are nonexcludable, bringing the total to eighty-one nonexcludable days.
 
 
 114
 In sum, the exclusions that may be justified under sections 3161(h)(1)(F) and 3161(h)(1)(J) by virtue of motion practice for the period challenged by Felton and Bruce fall far short of eliminating all seventy days specified in section 3161(c)(1). There undoubtedly is additional nonexcludable time in the 730 days between Felton's appearance before a judicial officer and the commencement of the trial, but the 81 nonexcludable days I have identified suffice for purposes of the Bruce and Felton appeals.
 
 B.
 
 115
 Because it misinterprets the Henderson opinion and relies on section 3161(h)(1)(F), the majority does not address the merits of the government's reliance on the absence of the co-defendant Richard Cox. The Speedy Trial Act provides that "[a]ny period of delay resulting from the absence or unavailability of the defendant" shall be excluded in making Speedy Trial Act computations. 18 U.S.C. Sec. 3161(h)(3)(A) (1982). The United States contends that Cox, a co-defendant named in indictment No. 83-49, was absent from the date the indictment was handed down until his arraignment on March 21, 1984. According to the United States, all of this period should be counted against the defendants because of the provision in the Act that "[a] reasonable period of delay [is excluded] when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. Sec. 3161(h)(7) (1982). Thus, the United States contends, the speedy trial clock did not begin to run in favor of any defendant until March 21, 1984.
 
 
 116
 For several independent reasons, sections 3161(h)(3) and 3161(h)(7) cannot be relied upon to exclude time in this case. These sections operate to exclude time only when a particular co-defendant has not been served. I do not construe these sections, however, to exclude time when a severance motion has been made, and as here, has been simply ignored. See United States v. Didier, 542 F.2d 1182 (2d Cir.1976). Bruce made a severance motion on August 1, 1983, which was not ruled upon until May 5, 1984, and Felton made a severance motion on November 21, 1983, which was not ruled upon until May 21, 1984.
 
 
 117
 In its sua sponte order of November 3, 1983, the validity of which the majority does not address, the district court relied on sections 3161(h)(3) and 3161(h)(7) to create an open-ended exclusion. On this record, however, the court's reliance on Cox's absence is misplaced because there was on November 3, 1983 no basis of record for making a determination of Cox's absence or unavailability. Under section 3161(h)(3), absence and unavailability are defined terms. A defendant is only absent "when his whereabouts are unknown and ... he is attempting to avoid apprehension or prosecution," or " his whereabouts cannot be determined by due diligence." 18 U.S.C. Sec. 3161(h)(3)(B) (1982). A defendant is only unavailable when "his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." Id. When the court entered the November 3, 1983 order, there was no information of record as to Cox's whereabouts. The absence of such information is significant because under the Act "the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3)." 18 U.S.C. Sec. 3162(a)(2) (1982).
 
 
 118
 It was not until February 14, 1984 that the court, for the first time, entered an order requiring the United States to disclose its efforts to locate Cox. By then, Felton's motion to sever Cox had been on file for eighty-five days. No status report with respect to Cox was filed until February 22, 1984. The filing of that report did not result in any excludable time because the government's showing did not satisfy the statute. The United States made no effort to establish that Cox was attempting to avoid prosecution. Indeed Agent Carroll testified that Cox was not even aware of the indictment until his arrest. Nor did the United States attempt to establish that Cox's whereabouts were known, but that he resisted returning for trial. Cox resided in Florida throughout the relevant period, and when he learned of the charge he did not resist coming to the Western District of Pennsylvania for trial. Thus the government's position depends upon its showing that Cox's whereabouts could not have been determined or his presence obtained by due diligence.
 
 
 119
 At a hearing addressed to the due diligence issue, Special Agent Carroll testified for the government. His testimony established the following: In March, 1983 the United States believed that Cox resided in Orlando, Florida. Agent Carroll informed federal agents in Orlando about the indictment, but they were unable to find him. Carroll called the Orlando authorities once in March, 1983 and once in April, 1983. In June, 1983 the Orlando agents obtained information that Cox had moved to Melbourne, Florida. They conveyed that information to Carroll, along with the information that they had notified the Melbourne police department of this development. Carroll made telephone calls to the Orlando officers in July and either October or November, 1983. Until February 22, 1984, he never spoke to the police department in Melbourne, Florida, where Cox was thought to be living, and then only as a result of the court's February 14, 1984 order. Cox was arrested on a warrant almost immediately thereafter.
 
 
 120
 The government produced no evidence that it had had anyone do any of the following: check the Orlando Post Office for a change of address listing; inquire at the Florida motor vehicle registry for a change of address for any automobile registration or driver's license issued to Cox; ask Cox's landlord in Orlando if Cox had left a forwarding address; check with the local telephone company for change in telephone listing for Cox; or examine any telephone directory for the Melbourne, Florida area for Cox's number. Aside from a few desultory and unfruitful telephone calls to unidentified federal agents in Orlando, so far as this record discloses, the United States exercised no diligence in attempting to locate Cox until the court's February 14, 1984 order. As a matter of law on this record, the United States failed to make out a prima facie case that Cox's whereabouts could not have been determined or his presence obtained through the exercise of due diligence. See United States v. Garrett, 720 F.2d 705, 707-08 (D.C.Cir.1983), cert. denied, 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984); United States v. Lopez-Espindola, 632 F.2d 107, 109 (9th Cir.1980).
 
 
 121
 Thus whether the question of the effect of Cox's absence is resolved on the theory that the longstanding severance motion should have been granted, and therefore, Cox's absence cannot be attributed to his co-defendants under section 3161(h)(7), or on the theory that Cox was not absent or unavailable within the meaning of section 3161(h)(3)(B), the result is the same. Cox's absence cannot be used to toll the speedy trial time clock.
 
 C.
 
 122
 The United States also relies upon the so-called "interest of justice" exclusion. The Speedy Trial Act excludes from the seventy-day calculation "[a]ny period of delay resulting from a continuance granted by any judge on his own motion ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. Sec. 3161(h)(8)(A) (1982). Arguably the November 3, 1983 order, which postponed the decision on pending motions from July, 1983 to May 18, 1984, was a continuance granted by a judge on his own motion. The period of any continuance, however, is not excludable unless the court sets out its reasons why granting it serves the ends of justice. In the absence of such a statement of reasons, the time is not excludable. United States v. Brooks, 697 F.2d 517, 520 (3d Cir.1982),cert. denied, 460 U.S. 1071, 103 S.Ct. 1526, 75 L.Ed.2d 949 (1983); United States v. Carrasquillo, 667 F.2d 382, 385-86 (3d Cir.1981). Although the district court purported to comply with this requirement, the recitals in the November 3, 1983 order are patently insufficient to warrant an ends of justice continuance. Moreover, considering the relevant factors listed in the statute, on this record an interest of justice exclusion would never be supportable.[2] For these reasons section 3161(h)(8) does not create any excludable time.
 
 IV.
 
 123
 The majority relies on the exclusion in section 3161(h)(1)(F), but its interpretation of that section, which eliminates the protections created in the Speedy Trial Plan for the Western District of Pennsylvania and Fed.R.Civ.P. 50(b), creates a loophole which totally undermines the Speedy Trial Act and is patently inconsistent with the intention of Congress in enacting it. Neither section 3161(h)(1)(F), properly construed, nor any other provisions in the Act, singly or in combination, can justify excluding 660 days from consideration. The judgments appealed from by Felton, No. 85-3303, and Bruce, No. 85-3304, should be reversed, and the indictments against them dismissed pursuant to 18 U.S.C. Sec. 3162 (1982).
 
 
 
 *
 Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation
 
 
 **
 Hon. Arlin M. Adams, United States Circuit Judge, was present at oral argument but did not participate in the decision
 
 
 [1]
 The separate appeal of codefendant Cox does not raise the Speedy Trial Act issue. Codefendant Serrao's Speedy Trial Act contentions have been submitted to the original panel which granted rehearing
 
 
 [2]
 To assist in comprehension of the statutory scheme of chargeable time, the text of the relevant sections is printed in an Appendix
 
 
 [3]
 Much of the elapsed time not discussed in our opinion was required by interlocutory appeals taken by the parties, time that is violative neither of the Speedy Trial Act or the Constitution. The lengthy delay other than that of the period between September 1983 and April 1984 is thus not relevant to the issues presented to us here
 
 
 [4]
 In United States v. Matsushita, 794 F.2d 46, 51 (2d Cir.1986), the Court of Appeals for the Second Circuit acknowledged that its decision in Cobb was no longer viable in light of the Supreme Court's decision in Henderson. The Court of Appeals for the Sixth Circuit followed Henderson in United States v. Keefer, 799 F.2d 1115 (6th Cir.1986)
 
 
 [5]
 Although the dissent has chosen to cite Finley Peter Dunne, Lewis Carroll, Samuel Clemens, and Art Buchwald, the hierarchial nature of the judicial process requires the majority to follow the holding of the Supreme Court in Henderson v. United States
 
 
 [6]
 The District Court for the Western District of Pennsylvania amended its local rule in 1983 in recognition of the reasonableness requirement set out in Novak. This amendment, however, was adopted only after Felton had filed his motion in August 1983. Because the amendment was not retroactive, it does not apply to the motions made before November 22, 1983, the date of its adoption
 
 
 [7]
 We point out that before the thirty days have elapsed a district court on its own motion may invoke Sec. 3161(h)(8)(A), (B) to allow further time for consideration of complex or multiple motions
 
 
 [8]
 Because this computation establishes that there was no violation of the Speedy Trial Act, we need not determine the prospective validity of the sua sponte extensions granted by the district court in its orders of November 3, 1983 and February 23, 1984. See Sec. 3161(h)(8)(A), (B) (interest of justice continuances) United States v. Tunnessen, 763 F.2d 74, 77 (2d Cir.1985); United States v. Brooks, 697 F.2d 517 (3d Cir.1982). Our decision not to discuss this ground should not be construed to be agreement with the dissent's position on this issue
 The district court also excluded all the time before codefendant Cox was arrested and arraigned in early 1984. The defendants contend that the government failed to prove due diligence in apprehending Cox, and therefore the Sec. 3161(h)(3) exclusion for a codefendant fugitive does not apply. We need not consider that point either.
 
 
 [9]
 After Novak, some of the district courts adopted local rules to supplement subsection (F). We recommend that the district courts now review those rules to determine if they are consistent with Henderson and comply with our suggestion that specific time limitations be employed. In addition, the rules should provide that the period beyond that excludable by their terms should be chargeable against the seventy-day time set out in the Speedy Trial Act unless otherwise excludable by other provisions of the Act
 
 
 [1]
 Anthony Serrao did not brief speedy trial contentions in this court. The United States concedes, however, that he preserved these claims in the district court, and should be afforded the same treatment with respect to them as is afforded defendant Bruce
 
 
 [2]
 Of the four factors listed in 18 U.S.C. Sec. 3161(h)(8)(B) (1982) as relevant to a section 3161(h)(8)(A) finding, three are relevant here:
 (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
 (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
 ....
 (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny ... counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.
 18 U.S.C. Sec. 3161(h)(8)(B) (1982).